## Reed's Executors *versus* Reed.

1. Where an owner offered to pay a broker a certain sum to obtain a purchaser for his property, and the broker procured parties to enter into negotiations for the purchase, and pending these negotiations, the owner allowed these parties five or six weeks' time to decide upon terms made by him in answer to theirs, a contract relation was created, which was violated by a sale by the owner to third parties within the time allowed, and the broker was entitled to recover the stipulated compensation.

2. The failure of the broker to protest against the sale of the property to third parties, when he was informed it was about to be made, was not necessarily fatal to his right to recover, and the effect of his silence was properly submitted to the jury.

3. Where the broker's name was signed to the paper, containing the offer to purchase the property, and his participation was not sought to be concealed, and he acted openly and fairly, his right to recover commissions was not affected by the fact that he was one of the intended purchasers.

October 16th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Erie county:* No. 84, of October and November Term 1875.

This was an action of assumpsit, brought by W. W. Reed against Harriet W. Reed, executrix, and C. M. Reed and J. C. Harrison, executors of Charles M. Reed, deceased.

The declaration set forth, that the deceased, Charles M. Reed, entered into a contract with the plaintiff to procure a purchaser for what was known as the Erie canal, running through Pennsylvania from the city of Erie to the Ohio river, in which improvement the deceased was the principal stockholder and otherwise largely interested, and that deceased agreed to pay to plaintiff $10,000 if he procured a purchaser and effected a sale of the canal, which sale plaintiff effected, wherefore the deceased became liable to pay plaintiff the sum of money above mentioned.

The evidence disclosed these facts: That in the latter part of July 1870, Henry Rawle being with General Reed, the deceased, at his house in Erie, W. W. Reed, the plaintiff, who was superin-

tendent of the canal in question, came into the room, and after some talk, General Reed expressed a desire to dispose of the canal, as it was a matter which annoyed him; that he was not able to get about and did not meet with the active business men along the line of the canal very often; and just as Mr. Rawle and the plaintiff were about to leave the room, the general said to plaintiff, that if he would get up a party to buy the canal and relieve him of the care of it he would give him $10,000, which amount it appeared was not conditional upon any particular sum for which the canal should be sold. Shortly thereafter the plaintiff and Mr. Rawle went to Sharon, and thence to Pittsburgh, and interested several parties in the project, who met in Erie on the 9th of August 1870 and in a body went to the house of General Reed and made a proposition to him to purchase the canal. It was in evidence that the plaintiff was the principal in securing the co-operation of these parties, Mr. Rawle becoming one of the parties to purchase, but having no interest in the commissions to be received by plaintiff. The proposition made by these gentlemen at this meeting with General Reed was afterwards embodied in a formal offer to purchase, in writing, the amount named being $200,000. The plaintiff himself was one of the parties who signed the proposition. About a week after this meeting General Reed made a counter-proposition in writing to these parties, with the modification, that the price to be paid should be $250,000, and some other minor conditions. After the meeting at the house of General Reed, the Pittsburgh gentlemen of those who had signed the offer, started to the east on a pleasure trip, and it seemed to be the understanding that the parties making the offer were to have the refusal of the purchase until the return of those who had gone east. About the middle of September, General Reed informed Mr. Rawle, who with Mr. Metcalf and the plaintiff were an advisory committee of the parties wanting to make the purchase, that he would give them no longer than to three o'clock of that day to decide whether they would take the canal on the terms of his counter-proposal. The committee having no power to conclude any arrangements, General Reed addressed a note to Mr. Rawle and plaintiff in these words: "My proposition for the sale of the Erie canal not having been accepted by you is hereby withdrawn," and upon the same day, the 15th of September 1870, the canal was sold to Mr. W. L. Scott, the president of the Erie & Pittsburgh Railroad, and was afterwards transferred to the railroad.

The canal competed with the railroad for the business of the section through which it passed, and Mr. Scott testified, that he did not think he would have purchased it and paid the price he did had no other negotiations been pending for its purchase. The parties who signed the offer were responsible, and were willing and anxious to make the purchase, even to doubling their subscriptions. Their signatures were in the main procured at the solicitation of

[Reed's Executors *v.* Reed.]

the plaintiff. It appeared, also, that most of them know nothing about General Reed's counter-proposal until the sale to Mr. Scott. It was in evidence also, that General Reed had confidentially informed plaintiff that he had an offer from Scott, and that plaintiff admitted that he had made no objection at the time.

The following points were presented by defendants :—

1. If the jury believe from the evidence that some time in July 1870 there was an agreement between General Charles M. Reed and the plaintiff, by which plaintiff was authorized to sell the Erie canal, as the agent of General Reed, before the plaintiff is entitled to recover he must show to the satisfaction of the jury that he, plaintiff, *made a sale or procured a sale to be made of the said canal.*

Answer : " Refused, because no evidence of such a contract."

6. That General Reed had a right to withdraw the proposition made to the parties proposing to purchase, before their notifying him of their acceptance, and also had the right to withdraw the proposition made to plaintiff, and if he did withdraw it the plaintiff is not entitled to recover.

Answer : " Affirmed, if no time was fixed for acceptance."

7. That the agreement between General Reed and plaintiff, testified to by Henry Rawle, of July 1870, could not be enforced in law for the want of mutuality.

Answer : " Refused."

8. If General Reed communicated to plaintiff his intention of making the sale to William L. Scott, before the sale was made, and plaintiff did not protest against it or claim his commission, plaintiff cannot recover.

Answer : " Refused, but refer to general charge."

9. Upon the whole evidence, the plaintiff is not entitled to recover.

Answer : " We decline so to charge, for we cannot withdraw the facts from you."

5. If plaintiff acted with the parties proposing to purchase, and in their interest, it was against the interest of General Reed, and plaintiff is not entitled to recover.

Answer : " Affirmed, if he acted adversely to General Reed's interest."

The court (Vincent, P. J.), in their general charge, *inter alia,* said :—

" A party was made up by the efforts of the plaintiff, the members of which were willing to buy General Reed's interest, and they made to him a written offer to pay $200,000 for it. When this proposition was presented to General Reed he did not accept it, but made a counter-proposition to them, offering to take $250,000 for his interest. The proposition was never accepted by the proposed purchasers, and the most of them say they never heard of it until after it had been sold to another party. This occurred about the middle of August 1870, and up to this time no party had been

found that had agreed to take Reed's interest in the canal at the price at which he was willing to sell it. If this was all, General Reed had a perfect right to recall his offer at any time, and unless the party that was made up acceded to his ultimate terms, the contract between the plaintiff and General Reed would be at an end. [But if General Reed gave to the party organized by the plaintiff five or six weeks in which to accept or refuse General Reed's counter proposition, and before the expiration of that time the offer was withdrawn on a few hours' notice and before it was possible to communicate with the parties desiring to purchase, and then the party were unable to perfect the purchase, and not because of their unwillingness to accept the proposition of General Reed, we think the plaintiff had complied with his part of the contract and is entitled to recover, unless he has forfeited his right for some other reason.]

"The plaintiff was, in one sense of the word, the agent of General Reed, at least to the extent of requiring from him perfect good faith towards the general in the whole proceedings.

"No price having been fixed by General Reed at which his interest would be sold, it was the duty of the plaintiff to get as good a price for the interest as he could induce the party to offer, and it was clearly his duty to make known to General Reed the utmost price which his party would give, if it was known to him. If he knew that his party was willing to pay $250,000, it was not good faith to General Reed not to let him know that fact, and his failure to do so would forfeit all claim on his part to any compensation for what he had done, and in that case he cannot recover. There was nothing in the relation between the plaintiff and General Reed that forbade the plaintiff to become openly one of the purchasing party, and especially when General Reed took no exception to his standing in that relation. If General Reed gave no specified time for the consideration of his proposition of sale, he could recall his offer whenever he pleased and sell to another, and the plaintiff would not thereupon have a right to recover the amount promised in case he got up a party to take the canal, for he did not get up a party willing to take it on terms that General Reed would agree to, and that the subsequent sale showed were not unreasonable. General Reed was not bound to take any price the party organized to buy saw fit to offer. He had a veto power over the whole matter until the party came to his terms. If General Reed told the plaintiff that he intended to withdraw the proposition he had made, and it was received by him without any protest that the time given had not elapsed, it is strong evidence that he did not understand that any time was given, as testified by Mr. Metcalf, and it is to be considered by you that no one of the parties proposing to buy testify that they were to have five or six weeks to make their decision on General Reed's offer."

[Reed's Executors *v.* Reed.]

The verdict was for the plaintiff, and judgment was afterwards entered for the sum of $12,460, principal and interest from October 15th 1870.

The defendants sued out this writ, the portion of the charge in brackets constituting the first assignment, and the refusal of the several points of the defendants in the order mentioned heretofore the second, third, fourth, fifth, sixth and seventh assignments of error.

*James C. & F. F. Marshall* and *S. E. & T. S. Woodruff*, for plaintiffs in error.—To render a contract binding it must be acceded to by both parties at the time: Lyon *v.* Fessler, 7 Watts 48; 1 Pars. on Con., chap. 2, sect. 1, title, "Assent of Parties," and cases cited. If the offer is withdrawn within the time for its performance and after its acceptance by the broker, there can be no recovery: Coffin *v.* Landis, 5 Phila. R. 176; 1 Pars. Con. 482. Mutuality essential to complete a contract: Donaldson *v.* Kerr, 6 Barr 487. Commissions cannot in general be recovered unless there is a valid sale capable of being enforced by both parties and resulting in a debt due or owing for the price: Kellogg *v.* Conklin, 6 Phila. R. 177; Longstreth *v.* Long, Id. 179. Vendor must accept purchaser before commissions can be claimed: Pratt *v.* Patterson, 7 Phila. R. 135.

Brokers are not even allowed commissions where the principal prevented the consummation of the bargain: Read *v.* Rann, 21 Eng. Com. Law Rep. 106; Broad *v.* Thomas, 20 Id. 62. Nor where he has not been immediate cause of sale: Green *et al. v.* Mules, 100 Eng. Com. Law Rep. 868; Keys *v.* Johnson, 18 P. F. Smith 42. Nor where the terms of the employer are not exactly met: McGarock *v.* Woodlief, 20 Howard 221. Party may employ broker and yet negotiate himself: McClave *v.* Paine, 49 N. Y. 561; Hungerford *v.* Hicks, 39 Conn. 259. To obtain commissions broker must have procured buyer and at the price named by owner: Clendendon *v.* Pancoast, 25 P. F. Smith 213.

*C. B. Curtis* and *L. S. Norton*, for defendant in error.—Where a party contracts to procure a purchaser for a property and has complied with his part of the contract and the other party fails to fulfil his part, the broker may receive compensation agreed upon: Edwards *v.* Goldsmith, 4 Harris 43; Hall *v.* Rupley, 10 Barr 231; Where a broker authorized to sell has commenced negotiations, pending the same, the owner cannot sell and refuse to pay commissions: Keys *v.* Johnson, 18 P. F. Smith 42; Earp *v.* Cummins, 4 Id. 394; Moses *v.* Bierling, 31 N. Y. 462; Barnard *v.* Monnot, 40 N. Y. 203; Clapp *v.* Hughes, 1 Phila. R. 382; Kock *v.* Emmerling, 22 Howard 69; Young *v.* Hunter, 6 N. Y. 204.

Mr. Justice WOODWARD delivered the opinion of the court, January 2d 1877.

There was technical error in the answer to the first point of the defendants below.   The declaration set out a contract on the part of Charles M. Reed to pay the plaintiff the sum of $10,000, if he " would procure a purchaser of and effect a sale of what was known as the Erie canal, in which General Reed was the principal stockholder and largely interested."   This was followed by an averment that a purchaser had been secured, a sale effected, and his part of the agreement performed by the plaintiff.   The point was in these words : " If the jury believe from the evidence that some time in July 1870 there was an agreement between Charles M. Reed and the plaintiff, by which plaintiff was authorized to sell the Erie canal as the agent of General Reed, before the plaintiff is entitled to recover he must show to the satisfaction of the jury that he made a sale or procured a sale to be made."   The answer was : " Refused because no evidence of such a contract."   The disposition of the point thus made was entirely inadequate.   The effect of it was to sever all connection between the case which the pleadings presented and the case which the evidence made out. The interpolation of the words " as the agent of General Reed," into the point did not justify the answer, for the jury were told, in another connection, that " the plaintiff was in one sense of the word the agent of General Reed, at least to the extent of requiring from him perfect good faith towards the general in the whole proceedings." In the general charge the relations of the parties were described with sufficient accuracy, but when the jury were told that there was no evidence of the contract averred in the declaration, the whole case was adrift, and the grounds of the verdict for the whole amount of the plaintiff's claim must have been chance and conjecture.

In other respects the governing questions in controversy, so far as they were developed, were properly ruled.   If the plaintiff acted upon the proposition made to him in July 1870, and procured parties to enter into a negotiation for the purchase of the canal, and while this was pending, five or six weeks were allowed to those parties to decide upon the offer of terms General Reed had made in answer to that which they had presented, a contract relation was created, which was violated by the sale to Scott within the time allowed.   It is true that the agreement for the extension of time was without any consideration to support a contract which the parties proposing to purchase could assert.   But the rights of the plaintiff stood on different grounds.   He had rendered service in view of the inducement which had been offered him by General Reed, and when the sale to Scott made it impossible to carry the original agreement into effect, he became entitled to the stipulated compensation.   In Edwards *v.* Goldsmith, 4 Harris 43, where a

broker was to receive a definite commission for procuring a purchaser for certain lots of ground, and complied with his part of the contract, but the defendant, without good reason, failed to comply on his part, it was held that the broker could recover in *indebitatus assumpsit* the amount of compensation agreed upon. And in Keys *v.* Johnson, 18 P. F. Smith 42, it was decided that when a broker authorized to sell at private sale has commenced a negotiation, the owner cannot, pending the negotiation, take it into his own hands and complete it, either at or below the price limited, and then refuse to pay the commissions. This view of the rights of the parties disposes in substance of the first, third and fourth assignments of error.

The failure of the plaintiff to protest against the sale of the canal to Scott, when he was informed it was about to be made, was not necessarily fatal to his right to recover. It is to be assumed for present purposes that General Reed was aware of all the facts on which the rights of the plaintiff rested. The court charged that the neglect to make objections to the sale was " strong evidence that the plaintiff did not understand that any time was given, as testified by Mr. Metcalf," and they referred to the fact that none of the parties proposing to buy, except Mr. Metcalf, testified that they were to have five or six weeks to make their decision on General Reed's offer. The effect of the plaintiff's silence was rightly submitted to the jury.

If the plaintiff acted openly and fairly in uniting with the other gentlemen who proposed to buy the canal, his right to recover was not affected by the fact that he was one of the intended purchasers. His name was signed to the paper containing the offer, and his participation was not sought to be concealed. The court held that the plaintiff could not recover if he acted adversely to the interests of General Reed, and this was as favorable an answer to their fifth point as the defendants were entitled to receive. The general principle of law is well established. An agent cannot act for each of two contracting parties. He cannot buy or sell, on behalf of his principal, property in which he is interested without making known to his principal all the facts which are known to himself: Taylor *v.* Salmon, 4 Myl. & Cr. 139. The case of Bollman *v.* Loomis, 41 Conn. 581, was that of a person acting as the friend and confidential adviser of a purchaser while at the same time he was secretly receiving compensation from the seller for effecting the sale. It was held that this was forbidden by the policy of the law, and that a contract for such compensation was void. Here the connection of the plaintiff with the purchasers was disclosed to General Reed, and he did not require the connection to be dissolved.

In their ninth point the defendants asked the court to charge upon the whole evidence that the plaintiff was not entitled to recover,

and the sixth error is assigned to the refusal of the point.   In support of this assignment the counsel have subjected the whole of the testimony to elaborate review.   Starting with the admitted principle that the plaintiff owed perfect fidelity and good faith to General Reed, the ground was taken in the first instance that this duty was violated by his failure to explain to the general the fact within his knowledge, that the parties proposing to purchase were willing to pay $250,000 for the canal at the time when the offer to pay $200,000 was made.   This branch of the case was passed upon by the jury.   The court said: "If the plaintiff knew that his party was willing to pay $250,000, it was not good faith to General Reed not to let him know that fact, and his failure to do so would forfeit all claim on his part to any compensation for what he had done, and in that case he cannot recover."   The verdict rendered under this instruction was decisive.   In the next place it was alleged that the duty rested on the plaintiff promptly to disclose to his associates the counter-proposition of General Reed, and that this duty was wholly neglected.   The general facts bearing on this subject, as gathered from the testimony, involve scarcely apparent conflict, and are capable of satisfactory reconciliation.   At the meeting of the parties proposing to buy, on the 9th of August 1870, Mr. Rawle, Mr. Metcalf and the plaintiff were appointed a committee to present to General Reed a written offer to pay $200,000 for his interest in the canal.   The offer was declined, and a counter-proposition was drawn up in pencil (formally written out and signed a week or two later) and given to Mr. Metcalf, by which the general's interest was offered for $250,000, and some of the terms suggested by the purchasers were modified.   It would seem that the agreement to give the purchasers five or six weeks for consideration must have been at this time made by General Reed.   With the counter-proposition in Mr. Metcalf's hands, the committee returned to the purchasers, and simply reported in the language of Joseph Walton, one of the witnesses, "that the general was so poorly he could not give a definite answer at that time."   Not one word was said in reference to the terms that General Reed had proposed.   It does not appear that the agreement to give time was reported by the committee.   Five witnesses, Messrs, E. A. Wheeler, Samuel Kimberley, James J. Bennett, Joseph Walton and Thomas J. Burchfield, all testified that they never heard of the counter-proposition until after the sale of the canal to Scott, on the 15th of September 1870.   With the facts fully within his knowledge as to the terms his principal was willing to make, it was contended on the argument here by the counsel for the defendants that, apart from the duty he owed to his associates, it was bad faith on the part of the plaintiff towards General Reed to withhold the facts from the purchasers, and permit them to separate with the vague understanding that a

[Reed's Executors *v.* Reed.]

second meeting should be held after their return from a pleasure trip to the east, which they were about to make. It was claimed that the plaintiff's action could only have been taken in order to subserve some selfish purpose of his own, in the acquisition of which the interests of his principal would be sacrificed. And this court were asked, in view of the evidence, to lay their hands upon this record, and to reverse the judgment on this ground. Such a disposition of the cause is impossible for every reason. The testimony was parol, and a jury alone are competent to establish facts. No point was presented to the court below by which this question could have been brought to their attention, and they were not required to grope for subjects of controversy which the parties did not themselves present.

Judgment reversed and a *venire facias de novo* awarded.