[Civ. No. 831.   Third Appellate District.—June 27, 1911.]

# N. P. JUSTY et al., Respondents, v. MATIAS ERRO, Appellant.

BROKER'S COMMISSIONS—FINDING OF PURCHASER—EVASION BY PRINCIPAL NOT ALLOWED.—If a broker who has an exclusive contract with his principal to find a purchaser for his land succeeds in finding a purchaser ready, willing and able to purchase the land upon the terms prescribed, the principal cannot evade the payment of the agreed broker's commissions by then refusing or neglecting to consummate the sale, or by changing its terms, or by selling the property to another, or by negligently dealing with the proposed purchaser so as to lose the benefit of the sale.

ID.—COMMISSIONS NOT LOST BY DEFECTIVE TITLE OR FRAUD OF PRINCIPAL.—If the broker has fulfilled the contract on his part, his commissions will not be lost because the title of his principal proves defective, or his wife refuses to join in the deed, nor because, owing to his fraudulent representations, the purchaser refuses to complete the sale.

ID.—PERSONAL CONDUCT OF SALE BY BROKER NOT REQUIRED.—It is not necessary that the broker should personally have conducted the negotiations between his principal and the purchaser leading to the sale, nor that he should have been present when the bargain was completed, nor that the principal should at the time have known that the purchaser was one found by the broker.

ID.—EFFECT OF BROKER SUFFICIENT IF PROCURING CAUSE OF SALE.— It is indispensable, though sufficient, that the effort of the broker was the procuring cause of the sale, and that, through his agency, the purchaser was brought into communication with the. seller, although the parties themselves negotiated the sale.

ID.—EMPLOYMENT OF SUBAGENT BY BROKERS TO ASSIST IN SALE—PURCHASER FOUND BY SUBAGENT — SUPPORT OF FINDING—CONFLICT— APPEAL.—The plaintiff brokers were entitled to recover their commissions where their evidence clearly sustains a finding that they employed a subagent to assist in negotiating the sale, and that he found a purchaser as such subagent during the life of their contract, notwithstanding conflicting evidence for defendant to the contrary.   Such finding is conclusive upon appeal.

ID.—EVIDENCE—ORAL AGREEMENT BETWEEN BROKERS AND SUBAGENT— SUBSEQUENT WRITING.—The court·properly allowed the brokers to prove that immediately after their written contract with the purchaser was signed, they made an oral agreement with the subagent to assist in finding a purchaser for an equal share in the commission, and that subsequently such agreement, without variance,

was reduced to writing before the purchase was effected. The oral agreement was admissible to show the original employment of the subagent, as well as the writing, to show a valid agreement between the brokers and the subagent.

ID.—COMMISSIONS RECOVERABLE ON AGREED PRICE STATED—PROPER EX-CLUSION OF EVIDENCE OF SALE AT LESS PRICE.—The brokers were entitled to recover the commissions fixed on the agreed price specified in the contract; and the court properly excluded evidence for the defendant that the sale of the land finally agreed upon between the principal and the purchaser was for a less price, where it is not made to appear that the brokers had any notice or knowledge of any reduction in price, or had acquiesced in or assented to such reduction, or to any modification of the terms of the contract material to their rights thereunder.

ID.—SALE AT LESS PRICE BROUGHT ABOUT BY THIRD PERSON—RIGHT TO MAXIMUM COMMISSIONS NOT DEFEATED.—A sale of the property within the period limited by the contract, made by the defendant at a less price, if brought about by any other person than the plaintiffs, without their acquiescence or consent, could not operate to defeat their right to the maximum commissions provided for by said contract, on the price therein fixed; and in that point of view, it is immaterial whether the claim of defendants that the person who effected the sale was not a subagent of plaintiffs, but an independent third person, should be held sustained or not.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Sutherland & Barbour, for Appellant.

Raleigh E. Rhodes, and W. D. Crichton, for Respondents.

HART, J.—The plaintiffs, doing a real estate brokerage business in the city of Fresno, brought this action for the purpose of recovering certain commissions alleged to be due and owing them from defendant for services, rendered under a written contract, in procuring a purchaser and consequently effecting the sale of certain land belonging to the defendant and situated in Madera county.

The cause was tried by the court, a jury having been waived by both parties.

Plaintiffs were given judgment, from which and the order denying him a new trial the defendant prosecutes this appeal to this court.

The complaint is in two counts, viz.: The one declaring upon the contract and the other upon the debt alleged to be due plaintiffs, for the services stated, in *indebitatus assumpsit*.

The answer specifically denies the averments of each count of the complaint.

The points urged against the judgment and order are, generally, that the evidence is insufficient to support certain of the vital findings and that the court committed errors, prejudicial to the defendant, in certain of its rulings allowing and excluding certain testimony.

As to the facts of the transactions giving rise to this action, the controversy seems to have been pivoted by both parties upon the sole question whether the sale of the land described in the agreement between the parties was brought about through the plaintiffs or entirely through one Charles de Roulet, the claim of defendant being that the latter, acting solely for himself and independently, and not as an agent of or connected in any way with the plaintiffs in the transaction, effected a sale of the property, upon which proposition it is contended that the plaintiffs are not entitled, at the most, under their agreement with defendant, to more than the aggregate commissions computed at the rate of two and one-half per cent on the "purchase price," as to which price there is also some dispute.

In the outset we may as well announce it to be our opinion that, according to the terms of the agreement between plaintiffs and defendant, the former are entitled to the maximum commissions provided for by said agreement even under the theory of the defense. In other words, even if it be true, as is the claim of the defendant, that de Roulet, through whom admittedly the land was sold during the term within which the plaintiffs had been given by the agreement the exclusive right (with a single exception of which we shall give special consideration hereafter) to sell the land was not acting for or connected in any manner or sense with plaintiffs in their agreement with defendant, the former would, nevertheless, be entitled to commissions of five per cent on the purchase price.

It is, however, deemed the more orderly, under the circumstances presented by the record, to postpone further consideration of this proposition until we have examined the facts as revealed by the record and some other questions which are raised by the appellant against the validity of the judgment and order.

But it is conceived not to be improper to state, in the beginning, some of the well-settled general rules of law relating to contracts by which real estate brokers are authorized to sell property for others on commission.

"If, within the time limited, the broker has produced a purchaser who is ready, willing and able to purchase upon the terms prescribed, the principal cannot evade the payment of the broker's commission by then refusing or neglecting to consummate the sale, or *by changing the terms,* or by selling the property to another, or by so negligently dealing with the proposed purchaser as to lose the benefit of the sale." (Mechem on Agency, sec. 967.) And, in consonance with the rule as thus stated, it has been held that if the broker has fulfilled upon his part, "he will be entitled to his commissions, although the sale is not consummated because the principal's title proves defective (*Hamlin* v. *Schulte,* 34 Minn. 534, [27 N. W. 301]; *Goodrich* v. *Holliday,* 18 Ill. App. 363; *Gonzales* v. *Broad,* 57 Cal. 224; *Knapp* v. *Wallace,* 41 N. Y. 477; *Doty* v. *Miller,* 43 Barb. (N. Y.) 529; *Sibbald* v. *Bethlehem Iron Works,* 83 N. Y. 378, [38 Am. Rep. 441]), or because the principal's wife refuses to join in the conveyance (*Clapp* v. *Hughes,* 1 Phila. 382), or because the purchaser refuses to complete the sale on account of false representations made by the principal." (*Glentworth* v. *Luther,* 21 Barb. (N. Y.) 145.)

Nor is it necessary that the broker should personally have conducted the negotiations between his principal and the purchaser leading to the sale, nor that he should have been present when the bargain was completed, "or even that the principal should, at the time, have known that the purchaser was one found by the broker." (Mechem on Agency, sec. 966, and cases cited in the footnote thereof.) And, while it is indispensable, yet it is sufficient that his efforts were the procuring cause of the sale; that, "through his agency, the

purchaser was brought into communication with the seller, although the parties negotiated in person." (Id.)

With the foregoing statement of some of the principles governing contracts of the character of the one here, we will now proceed to review the facts, which, as disclosed by the evidence from which the court made its findings, may thus be summarized:

On and prior to the third day of August, 1908, and until he sold the same, the defendant was the owner of a tract of land situated in the county of Madera and known as the "Borden and Freeland Ranch." On said third day of August, 1908, said de Roulet met defendant and asked the latter if he (defendant) would "sign a contract for his property for $36,000 and he said he would, and he came to Mr. Justy for that purpose," having been accompanied to Justy's office by de Roulet. After reaching Justy's office, the defendant executed, in the presence of Justy, the latter's son and Vise, Justy's partner, the following agreement:

"I hereby appoint N. P. Justy Company, W. R. Vise, my agents with exclusive right to sell the following property and receive deposit in my name. To-wit: I sell the ranch known as the Borden and Freeland ranch located in the county of Madera, State of California, as follows: for the sum of $36,000.00; $5,000.00 cash, balance of $31,000.00 in 5 — years as follows: $5,000.00 thirty days or more and $10,000.00 in ninety days after, balance to be paid in four years at amount arranged, with interest at 7 per cent per annum, payable annually. And I agree to furnish deed, abstract and clear title, and pay five per cent commission on purchase price out of said sale.

"Reasonable time allowed for making papers.

"This contract to remain in force for a period of ninety days from the date hereof and thereafter until written notice is given to cancel, and if sale is made by me or through me during the term of this contract, or after the expiration of the same, to anyone to whom said property has been submitted by said N. P. Justy Company, I agree to pay them two and one-half per cent commission on said sale.

"Fresno, Cal. Aug. 3rd, 1908.

"Aug. 3rd.          Signature        MATIAS ERRO.
"Witness          N. D. JUSTY at 3:20 P. M."

(Indorsed on reverse side:) ''Recorded at the request of Madera Abstract Company Sept. 25, 1908, at 50 minutes past 9 o'clock A. M., in Vol. 3 of Covenants, page 71, Records of Madera County, Cal., Walter A. Smith, Recorder.''

After the execution of said agreement, Justy and de Roulet entered into an agreement by which the latter engaged to act as subagent of plaintiffs in securing a purchaser of the property, and for his services in that capacity he was to share equally with plaintiffs in the commissions which they were to receive, on a sale of the land by them, under their agreement with defendant.

Within ninety days from the date of the execution of the agreement between plaintiffs and defendant, de Roulet found a purchaser in the person of a Mrs. Camy, a resident of Madera county. In de Roulet's own language may perhaps best be told the circumstances of the sale to Mrs. Camy: ''After I had been requested to find a purchaser for this property, I tried to get a buyer. To my best knowledge it must have been about three weeks after the 3d of August before I found anybody. This person was Mrs. Camy, sometimes known or called Madam Camy. I went over to Mrs. Camy's and took her over to Mr. Erro in Madera, and I told her she could get that property for $36,000, but when I brought Mrs. Camy over to Mr. Erro he raised it to $43,000. After a certain agreement, they reduced it to $42,000, and she agreed to pay that, in exchange for property or notes. This, I think, was about three weeks subsequent to the third day of August. We went to Mr. Erro two or three times. On each of these occasions Mr. Erro and Madam Camy were in conversation with reference to the barter or exchange of the property, purchase and sale of it. I think it was some time in October that they agreed upon terms. It was during the life of the contract.''

Justy's testimony that de Roulet, in the procurement of Mrs. Camy as the purchaser of the property, was acting for and as the agent of the plaintiffs under the agreement between the former and the latter is corroborated by the testimony of Vise and that of de Roulet himself. Clearly, the testimony of which we have given only a brief synopsis fully supports the finding of the court that ''in pursuance

of said agreement and thereunder, and prior to the expiration of said period of ninety days, in said agreement mentioned, said plaintiffs did find, provide and obtain a purchaser for said real property, for a sum over and in excess of the sum named in said agreement and asked by said defendant, to wit, for the sum of $42,000, and upon terms suitable and satisfactory to said defendant, and that said purchaser was able to purchase, willing to purchase, ready to purchase, and who actually did purchase said real property''; that having performed all the terms, covenants and conditions of their agreement with defendant, the plaintiffs ''became and were entitled to the sum of five per cent commission upon said purchase price of forty-two thousand dollars.''

The theory of the defendant, as developed by the evidence introduced in support of his resistance to the claim of plaintiffs, was, as before stated, that de Roulet, in bringing Mrs. Camy and defendant together in the transaction culminating in the sale to her, was acting entirely for himself and independently of plaintiffs; that he was never authorized by plaintiffs to act for them in the matter of the sale of the property involved in their agreement with defendant, and that his claim that he was so acting for plaintiffs was the result of an understanding conceived by him and the plaintiffs after the sale to Mrs. Camy was effected and sought to be established by them with the design and hope of securing the maximum commissions provided for in the agreement between plaintiffs and defendant. To this end, defendant undertook to show that de Roulet, after bringing about the sale of the land to Mrs. Camy, was told by plaintiffs that, if he would join them in maintaining that he had acted as their agent in his dealings with the defendant and Mrs. Camy, they could secure the five per cent commission to which defendant had bound himself, in case plaintiffs secured a buyer, and that they would then divide the total sum of the commissions, allowed on the basis of five per cent of the purchase price, in equal shares between them; that it was then that the idea that de Roulet, in the transaction with Mrs. Camy, was not acting for himself alone but as the regularly appointed agent of plaintiffs was first conceived by him and plaintiffs.

We need not review the evidence thus offered by the defendant and received by the court; for, while it may be conceded that some circumstances were thus developed which, upon their face, might tend to inspire suspicion as to the good faith of the claim that de Roulet acted at all times, in his negotiations with Mrs. Camy, as the agent of plaintiffs, still the effect of that testimony, even if it were material, could only be to raise a substantial conflict in the evidence, and, as is well understood, the conclusion of the trial court as to the truth of the matter must, therefore, be accepted by this court.

The defendant did not deny making the agreement with plaintiffs. Indeed, his letter written three days after the expiration of the ninety days during which the contract, by express language, was to remain in force (it will be observed that the contract further provided that after the ninety days it should remain in force until it was canceled by written notice), notifying plaintiffs of the cancellation of the agreement, is itself evidence of a conclusive character that he recognized the legality and binding force of its terms. Justy, Vise and de Roulet, as we have seen, each testified that the last named was, immediately upon the execution of the agreement between plaintiffs and defendant, especially employed by plaintiffs to find a purchaser of the property described in said agreement, and that from that time until he did find a purchaser in the person of Mrs. Camy he continued in their employment for that specific purpose. Conceding, for the present, that the evidence produced by defendant upon this point would, if sufficient in probative power, have established a legal defense to the right of plaintiffs to recover the maximum commissions stipulated for by the agreement, it was then, of course, for the trial court to decide upon which side the evidence upon that issue preponderated, and, having found thereon with plaintiffs, it is not, as before stated, within the legal province of a reviewing court to declare that the court below thus reached an erroneous conclusion or abused the discretion with which it is invested in the matter of weighing evidence and, to that end, judging of the credibility of the witnesses.

It is further urged by appellant that there is no evidence in the record disclosing the precise price at which the real estate described in the contract was sold. This point may

appropriately be considered in connection with the rulings of
the court by which the defendant was prevented from show-
ing that the price for which the property was sold was less
than the sum of $36,000. This will necessitate a return to
the facts from which the question arose in the court below
and is presented here.

De Roulet, it will be recalled, testified that when he brought
Mrs. Camy to Erro, after having told her that she could
obtain the property for the sum of $36,000, the latter refused
to accept said sum, but raised the purchase price to $43,000,
finally, however, agreeing to take $42,000.. But the last-
named price, it appears, included, in addition to the land
itself, a large amount of personal property of various kinds—
some livestock and some consisting of farming implements,
machinery, etc.

The court, by its judgment, allowed plaintiffs commissions
computed upon the basis of the price for which the farm and
said personal property were sold, viz.: $42,000, a judgment
having, consequently, been rendered and entered in favor of
plaintiffs for the sum of $2,100. But in passing upon the
motion for a new trial, the court, as a condition to a denial
of said motion, ordered and required plaintiffs to remit the
sum of $300 of the judgment so rendered and entered. The
plaintiffs, within the time specified by the court in its order,
filed a written remission of the amount designated by the
court, the effect of which was to reduce the judgment in
favor of plaintiffs to the sum of $1,800, which, manifestly,
represents commissions at the rate of five per cent on the
purchase price of the land as set forth in the agreement be-
tween plaintiffs and defendant.

But it is now earnestly insisted that, notwithstanding such
reduction of the amount for which judgment was originally
awarded, the court's refusal to permit evidence to be received
which, it is claimed, would or might have disclosed that the
price Mrs. Camy agreed to pay for the land was less than
the sum of $36,000, was prejudicially erroneous. But, we
think, the rulings so complained of were proper from every
standpoint from which we have been led to view this record.
As we have seen, the rule approved by all the authorities is
that where, as here, the contract between the broker and the
seller itself fixes and specifies the price for which the former

is authorized to sell the property on specified commissions, the broker, in case he procures a purchaser ready, willing and able to purchase at such price, is entitled to the stipulated commissions on the price so fixed and specified, regardless of whether the owner has reduced the price in the final sale of the property to such purchaser or otherwise changed the terms of the contract. (Mechem on Agency, sec. 967; *Stewart* v. *Mather,* 32 Wis. 349.) This rule is, of course, subject to the qualification that the broker had no notice or knowledge of the reduction of the price or had not acquiesced in or consented to such reduction or other modifications of the terms of the contract material to his rights thereunder.

The contract between the plaintiffs and the defendant in the case at bar authorized the former to sell the property for the sum of $36,000, on which sum they were to receive, as compensation, if they brought to defendant a buyer within the time limited by said contract, commissions at the rate of "five per cent on the purchase price." And the words "purchase price" cannot justly or reasonably be construed to have reference to any other price than that definitely fixed and specified in the contract. There is no evidence, nor, indeed, any pretense, that plaintiffs consented to a reduction of the price so fixed. Therefore, they were entitled to be paid commissions on the basis of the price thus definitely fixed, and in accordance with which they undertook to sell the property, without regard to any change in such price to which the defendant himself, without their knowledge or consent, might have assented with the buyer. The part of the convention that plaintiffs obligated themselves to perform was completely fulfilled when, through their efforts, there was brought to the defendant a buyer then ready, willing and able to buy the property.

From the foregoing views, it manifestly follows that testimony which might have shown, or tended to show, that the defendant, in his negotiation with Mrs. Camy immediately culminating in the sale, agreed to and did in fact sell the property described in his agreement with the plaintiffs for a smaller sum than that fixed by said agreement would not have been material or relevant for any purpose.

Objections were also made by counsel for defendant to all questions propounded to the witnesses, Justy, Vise and

de Roulet, with regard to the conversation occurring between said witnesses immediately after the agreement between plaintiffs and defendant was executed. The conversation thus sought to be brought out, and, in fact, brought out, involved the agreement and the terms thereof between plaintiffs and de Roulet by which the latter was employed by plaintiffs to assist them, as their agent, to sell defendant's property. The rulings allowing testimony of said conversation were not erroneous. Assuming, for the purpose only of considering said rulings, that the theory of the defense is tenable—that is, that proof that de Roulet, in his transaction with Mrs. Camy, acted for himself and not for plaintiffs, would, if it satisfactorily showed the fact, constitute a defense to the right of plaintiffs to recover at all—it was, in such case, of course, incumbent upon plaintiffs, in order to establish their title to the maximum commissions provided for in their contract with defendant, to show that de Roulet had been duly and regularly authorized by them to act for them and that he did act for them in the sale of the property. Indeed, declaring and relying, as they do, in one count of the complaint, upon the contract for a recovery, the plaintiffs had the undoubted right to show that they negotiated the sale, through whomsoever it might have been personally accomplished, if by someone employed by them for that purpose. But this agreement, as made orally immediately following the execution of the contract between plaintiffs and defendant, was subsequently (September 20, 1908), and prior to the time at which the contract between defendant and Mrs. Camy was executed (October 10, 1908), reduced to writing and in that form offered and received in evidence. The vital and only important covenant involved in said agreement was that by which de Roulet was authorized by plaintiffs to find for them a purchaser of defendant's property, to prove which fact was the sole purpose of the production of evidence of said agreement. Therefore, even if it be questionable whether the testimony of the oral agreement of the parties was proper, in view of the requirement of our statute of frauds that certain agreements authorizing or employing an agent or broker to sell real estate for compensation shall be in writing (section 1624, subdivision 6, Civil Code), a proposition we need not decide here, it cannot, of course, be said that the written evidence thereof

16 Cal. App.—34

was not ·competent and proper, or that the testimony of the oral negotiations and agreement authorizing de Roulet to act for plaintiffs could in any manner or measure have prejudiced defendant, since there is not, nor any claim that there is, any material variance between the agreement as orally made and the written evidence thereof. But, in any event, while, as before declared, the finding of the court that the efforts of plaintiffs were the procuring or proximate cause of the sale is amply supported by the evidence, which finding necessarily implies a finding that de Roulet acted for plaintiffs in causing the sale to be made to Mrs. Camy, yet we are of the opinion, as previously suggested, that, accepting the theory upon which the defendant seeks to defeat the right of plaintiffs to the recovery of the maximum commission computed upon the basis of $36,000, the sum specified in the contract as the purchase ·price, it then becomes immaterial whether de Roulet did or did not act, in the transaction, as agent of plaintiffs, and that, therefore, the latter must still prevail.

This proposition calls for a construction of the agreement between plaintiffs and defendant and the rights of the former thereunder and, if it be sound, then, obviously, error cannot be predicated of any of the rulings by which the court refused to allow testimony designed to show that de Roulet was not employed by plaintiffs to find a purchaser or to negotiate ·a sale of defendant's property for them, or that he was not acting for them when he brought Mrs. Camy to defendant as a purchaser of said property.

The agreement between plaintiffs and defendant, it will be noted, gives to plaintiffs the *exclusive* right to sell or negotiate the sale of the property therein described for the period of at least ninety days from the date of the execution thereof. The only qualification of said provision and the right so given is that the defendant himself may sell the property to any party to whom the same has been submitted by plaintiffs, in which event the latter were to receive commissions at the rate of two and one-half per cent, or the minimum commissions stipulated for in the agreement. Thus it is to be observed that the only contingency which could arise under the contract, the happening of which during the life of the agreement would limit the right of plaintiffs to the minimum com-

missions provided for thereby, was the sale of the property by defendant to some party to whom the proposition of the sale had antecedently been submitted by the plaintiffs. In other words, there is only one thing that could have occurred, under the terms of the contract and within the time limited thereby, which would compel the plaintiffs to accept the smaller commissions provided for by said agreement, and that is where the sale was made by defendant himself to a party to whom the plaintiffs had, prior to such sale, submitted the proposition. Of this proposition, there is, in our opinion, absolutely no ground for debate. This being true, the agreement, viewed and considered in its entirety, is rationally capable of but one construction, viz.: That, with the said exception that the owner of the property might himself have sold the same by his own personal efforts to *some person to whom the proposition of the sale had previously been submitted by the plaintiff*—that is to say, to a party to whose attention the proposition had been brought by plaintiffs but who has finally purchased the same through the personal efforts or negotiations of the defendant himself—the plaintiffs were vested with the *sole* and *exclusive* right to sell said property. But a sale of the property, within the period limited by the contract, by the defendant, brought about by any other person than the plaintiffs, without their acquiescence or consent, could not operate to defeat the latter's right to the maximum commissions provided for by said agreement (see *Kimmel* v. *Slelley,* 130 Cal. 555, [62 Pac. 1067]), and, where the sale had been so made, in an action to assert that right, whether said action was upon the contract itself or for a breach of its terms (the maximum commissions which could be earned by them under the terms of the contract would, in the latter action, constitute the measure of damages), they would be entitled to recover the commissions computed at five per cent on the sum of $36,000. (See Mechem on Agency, sec. 967; *Lane* v. *Allbright,* 49 Ind. 275; *Reed* v. *Reed,* 82 Pa. 420; *Fox* v. *Byrnes,* 52 N. Y. Super. Ct. 50.)

There is no evidence in the record, nor, indeed, any claim, that the plaintiffs, or either of them, submitted the proposition of sale to Mrs. Camy, unless it was done through de Roulet as their agent. Vise testified that he "talked with

Mrs. Camy with reference to this property *after* the sale but never *before.*"

The purpose of the evidence unsuccessfully sought to be brought out by the cross-examination of Justy, Vise and de Roulet was to support the theory of the defense that de Roulet, in bringing Erro and Mrs. Camy together on the proposition of the sale of the land, was in no sense connected with plaintiffs, was not acting as their agent, but was acting solely for himself; that the proposition had not been submitted to her by the plaintiffs. As proof of such fact would not, as is manifest, have released or absolved Erro from liability to pay plaintiffs the stipulated maximum commissions on the purchase price as specified in the agreement, it follows, of course, that the rulings of the court excluding evidence of such fact, if it was a fact, were proper. Such testimony, in other words, even if sufficient to satisfactorily prove the fact, could not have established a legal defense to the right of plaintiffs to recover the five per cent commissions on the sum of $36,000, fixed and specified by the contract as the purchase price of the property.

There are some other points presented which, in view of our theory of the meaning and scope of the agreement between the parties to this action, call for no special notice.

We have discovered no reason for interfering with the judgment and the order, and they are therefore affirmed.

Chipman, P. J., and Burnett, J., concurred.