[Civ. No. 33299. Second Dist., Div. One. July 9, 1969.]

IRVIN BERZON, Plaintiff and Respondent, v. U.L.C. CORPORATION, Defendant and Appellant.

Paul Ian Mostman, James M. Farley and Martin S. Stolzoff for Defendant and Appellant.

Zagon, Schiff, Hirsch & Levine and James P. Schreiber for Plaintiff and Respondent.

FOURT, J.—U.L.C. Corporation (hereinafter sometimes referred to as U.L.C.) appeals from a judgment by the trial court, sitting without a jury, finding it liable to pay to real estate broker Irvin Berzon as damages for breach of an exclusive right to sell specific realty the sum of $15,000 and as compensation for services performed by salesman Helen Berzon the additional sum of $2,500.

Appellant in substance contends: (1) that the exclusive right to sell agreement is ambiguous and the trial court improperly refused to admit parol evidence in explanation; (2) the evidence is insufficient to sustain the judgment because U.L.C. proved that the written contract was modified or superseded by an executed oral agreement or agreements; (3) that, in any event, the agreement was breached by Berzon's failure to produce a purchaser; and (4) that Berzon's recovery is barred by the statute of frauds. These contentions lack merit.

The record discloses that on or about November 7, 1963, Dr. E. E. Hassen executed on behalf of U.L.C. as owner an ''Exclusive Authorization and Right to Sell'' which gave to Irvin Berzon, a licensed real estate broker, the exclusive and irrevocable right for the period beginning November 7, 1963, and ending at midnight March 7, 1964, to sell certain real property located at 638 North Faring Road in Los Angeles for $300,000. The California Real Estate Association

Standard Form which the parties utilized provided that' U.L.C. should pay to Berzon a commission of 5 percent of the sales price in the event the property should be sold by anyone during the designated period, or in the event the property was withdrawn from sale, transferred, or leased during the term of the agreement. The parties further agreed, by initialed, hand-printed interlineation in the blank space provided on the printed document, that U.L.C. would pay to Berzon for the services of his wife, Helen Berzon, who was a licensed real estate salesman, the sum of $2,500 for renovation of the house and grounds to place them in condition to be offered for sale, and that this sum should be paid upon transfer of title regardless of when or how the subject property was sold or transferred. Berzon filled in the blanks on the form and drafted the provision relating to his wife's compensation and the agreement was then reviewed by Dr. Hassen, a physician who had engaged in numerous business transactions and acquired extensive experience in real estate.

After the agreement was executed, Helen Berzon acting pursuant to the contract, made arrangements with carpet cleaners, gardeners, painters, and other skilled tradesmen to meet her at the premises where she thereafter supervised the cleaning, painting, and renovation of the residence and the landscaping of the two-acre parcel of real property on which it stood. The bills for materials and labor relating to the workmen's services were paid by the property owner. Thereafter, and on or about December 18, 1963, during the term of the exclusive authorization to sell and while Berzon and his wife were engaged in diligent effort to procure a purchaser for the property, Dr. Hassen, once again acting on behalf of U.L.C., entered into a written escrow agreement to exchange the property for two condominium apartments owned by Julian Weinstock Construction Co., Inc. Dr. Hassen did not inform Berzon, and for some time neither Berzon nor his wife were aware that the escrow had been opened by Dr. Hassen and Julian Weinstock. It was the latter part of December 1963 when Berzon met Weinstock in the elevator at the Friars Club and learned of the existence of the escrow. Berzon thereafter, pursuant to a note of authority from Weinstock, verified and reviewed the terms of the escrow which had been opened at Union Bank in Beverly Hills.

Berzon and his wife nonetheless continued to show the U.L.C. property because Dr. Hassen did not advise them of the pending property exchange transaction and, on the con-

trary, he continued to urge that Berzon and his wife should show the property and attempt to obtain the listed price. Moreover, Berzon was aware on the basis of his prior real estate experience that escrows occasionally terminate unsuccessfully so that during the period the Weinstock/U.L.C. escrow remained open it did not represent to Berzon a completed transaction.

Berzon's exclusive right to sell the U.L.C. property expired on March 7, 1964. On or about May 29, 1964, the Weinstock/ U.L.C. escrow was successfully completed with the exchange of title to the respective properties. Berzon thereupon demanded his commission and the $2,500 due for his wife's services. U.L.C., however, failed to pay Berzon either the amount of the agreed-upon real estate broker's commission or the amount due as compensation for supervision of the property renovation and Berzon accordingly instituted this action in superior court to recover both amounts.

Following the two day trial in February 1968, the court entered its findings determining in pertinent part that Erwin E. Hassen as vice president acting on behalf of U.L.C. had entered into the hereinabove-described written exclusive right to sell agreement; that Irvin Berzon, a licensed real estate broker, diligently sought a purchaser for the property; that Helen Berzon, a licensed real estate salesman, rendered services pursuant to the agreement in supervising the renovation of the property; that on December 18, 1963, Hassen, again acting on behalf of U.L.C., entered into the escrow agreement with Weinstock which rendered it impossible for Berzon to render sales services; that the escrow was consummated May 29, 1964; that although the contract which resulted in the ultimate transfer of the property to Weinstock was entered into during the term of Berzon's exclusive right to sell, U.L.C. paid nothing to Berzon; that there was no evidence of fraud or misrepresentation by Berzon as alleged by answer; that except as specifically related in its findings the court found all the allegations of the first amended complaint true and those of appellant's amended answer to the first amended complaint false; the court concluded that U.L.C. should pay Berzon $15,000 for breach of contract and $2,500 for services rendered by Helen Berzon and its judgment for these amounts was entered accordingly.

■ Appellant first contends that the written contract was ambiguous and the trial court improperly refused to admit parol evidence to explain its terms. Although appellant does

not explicitly set forth the basis for this contention, our review of the document confirms the trial court's determination that the exclusive right to sell agreement is unambiguous and constitutes a valid and binding contract insofar as it relates to Berzon's claims. The street name of the house location is listed in the agreement as "Farington" but the parties stipulated and the court found accordingly that the correct address was known to be "Faring." The precise terms upon which U.L.C. would be willing to sell the property are not delineated but that is irrelevant because the price of $300,000 and loan commitment of $100,000 at 5¾ percent payable $641 per month are given, and U.L.C. would customarily be bound to sell for cash or could freely negotiate terms on a sale at the listed price. Since the material terms of the agreement are definite and certain the trial court's denial of parol evidence was proper.

Appellant's second contention is that the evidence is insufficient to sustain the judgment. This contention is based upon an individual interpretation of the evidence contrary to the findings of the trial court. Despite its determination that the agreement was unambiguous the court liberally allowed direct and cross-examination of Dr. Hassen, the only witness for the defense, and itself further questioned the doctor concerning the circumstances surrounding execution of the written contract and Dr. Hassen's understanding of its terms. Dr. Hassen's testimony was vague and evasive and the court was entitled to assess his credibility accordingly and to disregard or give little weight to his statements. In addition, Dr. Hassen referred to Mr. Rubin as a witness to certain events, and although Mr. Rubin was available in the jurisdiction the defense did not bring him in to corroborate Dr. Hassen's testimony which tended to further discredit this evidence. Appellant, however, asserts that this evidence proves the existence of an oral agreement modifying or superseding the terms of the written contract and constitutes an affirmative defense which shifts to Berzon the burden of adducing evidence in rebuttal to disprove the oral agreement, which respondent failed to undertake. Such is not the case. Respondent proved a prima facie case for the recovery of the amounts specified in his complaint and the court as the trier of fact was entitled to make the ultimate determination relating to the weight of the evidence introduced by each of the parties.

It is apparent from the findings and the judgment that the court heavily discounted Dr. Hassen's testimony, but the

determination of the credibility of witnesses is exclusively the province of the trial court. ██ ''It is not for us to retry the factual issues, but to adhere to the well-established rule that the trial court is the exclusive judge of questions of credibility of witnesses and weight of evidence, and that the determination of the trial court upon questions of fact is conclusive upon this court where there is any evidence fairly tending to support that determination.'' (*Polk* v. *Polk*, 228 Cal.App.2d 763, 775 [39 Cal.Rptr. 824].) ██ ''The power of an appellate court ends with respect to the facts when it determines that there is substantial evidence which supports the trial court's findings.'' (*DeYoung* v. *DeYoung*, 27 Cal.2d 521, 526 [165 P.2d 457].) As our recital of the evidence demonstrates, there was substantial evidence to support the trial court's findings. ██ It was not required of the trial court to make findings with respect to the existence of an oral executed contract because the existence of such an agreement was neither alleged by appellant nor proved by the evidence.

Appellant thirdly contends that, in any event, the contract between Berzon and U.L.C. was breached because Berzon failed to produce a purchaser for the property within the term of the agreement at the price therein specified, and, further, that the provision relating to compensation for Helen Berzon's services is not valid. This is not the rule and similar contentions relating to the broker's commission have been dealt with in the following language :

██ ''It is further contended that irrespective of any fault of defendant, plaintiffs cannot recover in the absence of a showing that they had a purchaser ready, able and willing to buy. This assumes, of course, that the action was brought to recover an earned commission. Such was not the nature of this action, which seeks damages for breach of an exclusive agency contract. Plaintiffs were entitled to the exclusive right to contract for the sale of the property during the period specified, and the sale by Pair before the conclusion of that period destroyed that right and made performance by them impossible. Upon this breach by defendant plaintiffs were entitled to sue for the benefits they might have received under it, namely, the agreed commission.'' (*Fleming* v. *Dolfin*, 214 Cal. 269, 271 [4 P.2d 776, 78 A.L.R. 585] ; see also *Justy* v. *Erro*, 16 Cal.App. 519, 531 [117 P. 575] ; *Leonard* v. *Fallas*, 51 Cal.2d 649 [335 P.2d 665] ; *Wright* v. *Vernon*, 81 Cal.App.2d 346, 347 [183 P.2d 908] ; *Kimmell* v. *Skelly*, 130 Cal. 555, 558-559 [62 P. 1067].) ██ Insofar as the compensation due to Ber-

zon for his wife's services, "The parties to a broker's contract for the sale of real property are at liberty to make the compensation depend upon any lawful conditions they see fit to place therein. [Citations.]" (*Leonard* v. *Fallas, supra,* 51 Cal.2d 649, 652; *Kimmell* v. *Skelly, supra,* 130 Cal. 555, 559.)

The provision was inserted in the agreement and initialed by both parties; it is not illegal or wrongful by its terms, and the evidence supports the trial court's findings that Helen Berzon in fact performed the services therein specified, for which Berzon is entitled to compensation.

Finally appellant contends that Berzon's claim is barred by the statute of frauds. Once again, it is not clear in what manner appellant contends the agreement is deficient. Insofar as the contention is based upon a claim that the written agreement is not definite or certain, it must fail with the trial court's determination, confirmed by our review of the agreement, that it is sufficiently clear and specific to be enforceable. Insofar as appellant bases the contention upon the rule that a contract relating to the transfer of real property and a broker's claim to a commission are required to be in writing, it must fail because the findings and judgment are based upon the written contract and not upon the existence of an "oral executed agreement" as appellant claims they must or should be. Finally, the statute of frauds was not affirmatively raised by allegations in the answer and therefore no evidence was properly admissible relating to the agent's authority to enter an agreement to sell the property. An affirmative defense raised neither by the pleadings nor in the course of evidence admitted at the trial cannot be considered on appeal (*Farthing* v. *San Mateo Clinic,* 143 Cal.App.2d 385, 394 [299 P.2d 977]; *Afghan Nat. Assn.* v. *Akbar,* 154 Cal. App.2d 97, 100 [315 P.2d 415]), and the trial court properly made no finding on this matter which was not in issue. (*Calabrese* v. *Rexall Drug & Chemical Co.,* 218 Cal.App.2d 774, 785 [32 Cal.Rptr. 665].)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied August 4, 1969, and appellant's petition for a hearing by the Supreme Court was denied September 4, 1969.