FRANKLIN I. SMITH *vs.* OTIS KIMBALL & another.

Suffolk. December 11, 12, 1906. — January 3, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Agency. Broker. Contract.*

In an action by a real estate broker for a commission on a sale of real estate belonging to the defendant alleged to have been effected by his services, it appeared that the plaintiff had introduced himself to the defendant as a broker who might sell the property for him, that subsequently he saw the son of one L. and thus obtained certain tentative offers for the property which were supposed by the plaintiff to be in behalf of L., who always was referred to by the plaintiff and L.'s son as the son's client, that the plaintiff himself never met L.

and that the highest price thus authorized or named was $175,000, that the plaintiff submitted to the defendant a "tentative proposition" of $180,000, which was refused, the defendant naming $185,000 as his price, that the defendant said to the plaintiff "Bring me an offer in writing, and perhaps we can get together," that about this time the defendant told the plaintiff that unless his clients hurried and got around within two or three weeks the negotiations would be off, that the plaintiff told the son of L. that his client would have to hurry if he was going to purchase the property, and that if anything was going to be done it would have to be done within two or three weeks, that afterwards L.'s son told the plaintiff that he had submitted the matter to his client and had no definite information, and the plaintiff thought that L. and his son had let the matter drop, that the two or three weeks mentioned by the defendant expired, and that shortly after this L. through a person other than the plaintiff procured an introduction to the defendant and they agreed upon a price of $182,500 for · the property, which L. purchased from the defendant for that sum. The defendant never had known that the offers reported by the plaintiff had come in any way from L. *Held,* that a verdict rightly was ordered for the defendant; that the only contract that could be found on the part of the defendant was to pay the plaintiff a commission if he procured a sale of the property, that the plaintiff failed to do this, and was discharged by the defendant, and that there was no possible question of the defendant's good faith in terminating the plaintiff's employment and afterwards selling the property to L., as the defendant did not know that L. had been the plaintiff's customer.

CONTRACT by a real estate broker for $1,825 as a commission on the sale of certain real estate, belonging to the defendant Caroline S. Kimball numbered 1511 to 1525 on Washington Street in Boston and known as the Hotel Sanford, alleged to have been effected by the services of the plaintiff. Writ in the Municipal Court of the City of Boston dated August 19, 1904.

On appeal to the Superior Court the case was tried before *Harris*, J., who at the close of the plaintiff's evidence ordered a verdict for the defendants. The plaintiff alleged exceptions.

*S. D. Elmore*, for the plaintiff.

*S. C. Brackett*, for the defendants.

SHELDON, J. Taking the most favorable view of the evidence for the plaintiff, the jury might have found that he, having learned in the autumn of 1902 that the Hotel Sanford might be bought, called upon the defendant Otis Kimball, who it is admitted had full authority to act for the other defendant, introduced himself as a real estate broker, and said that he thought he might sell the property for Mr. Kimball. He subsequently talked about the property with one W. G. Lincoln, who represented a possible purchaser, Alfred V. Lincoln, and obtained some tentative offers from him, though never himself meeting

Alfred V. Lincoln, nor even knowing except by his own inference who the prospective purchaser was. These tentative offers, or casual offers, as they were called, he communicated to Mr. Kimball, and got from him information about the property, its rentals and expenses, and obtained first one price and then other lower prices for the property, and communicated these to W. G. Lincoln. These negotiations continued until the summer of 1903. In the autumn of 1903 they were resumed. The plaintiff submitted to Mr. Kimball a "tentative proposition" of $180,000 for the property in behalf of the proposed purchaser, and received from Mr. Kimball a proposed price of $185,000; but no agreement was reached, and no nearer approach to a completed sale ever was made through the plaintiff. Mr. Kimball said to the plaintiff, "Bring me an offer in writing, and perhaps we can get together." The plaintiff told this to W. G. Lincoln about the middle of November, and said that his clients would have to hurry if they were going to purchase the property; that if there was anything going to be done it would have to be done within two or three weeks; and W. G. Lincoln said that he would tell his client. The prospective purchaser always was spoken of between the plaintiff and W. G. Lincoln as the latter's client. Afterwards W. G. Lincoln told the plaintiff that he had submitted the matter to his client, but had no definite information; and the plaintiff testified that so far as he knew the Lincolns seemed inclined to let the matter drop there. Some time in the autumn of 1903, apparently either early in November or two or three weeks before the property actually was sold, Mr. Kimball said to the plaintiff: "Mr. Smith, if you are going to do anything with your client, you will have to get right at it, because in two or three weeks my suit for damages against the elevated will come up and then the matter will be off, and we can't do any business." At one place in his testimony the plaintiff said that this was just before the actual conveyance of the property; but the circumstances all show that he did not mean by this that the time named by Mr. Kimball had not expired before the sale, nor is this alleged in argument. On cross-examination he stated that after Kimball told him that unless his clients hurried and got around within two or three weeks the negotiations would be off, his client did not come around

through him, and that he was not the one who completed the negotiations.  He also said in one part of his testimony that his purchaser never was able to give a definite price, and in another part, that he had a definite offer of $175,000 ; but nothing ever came of any such offer.

In this state of affairs, Alfred V. Lincoln procured one Mr. Wilson, a former employer of his, to introduce him to Mr. Kimball, and they agreed upon a price of $182,500 for the property. It was conveyed to A. V. Lincoln by the defendants, for that price, on December 18, 1903.  The purchaser and the seller each gave to Wilson $500.

The only agreement that could be found to have been made between the plaintiff and the defendants was that the former should have a commission if he procured a sale for the latter. On the evidence, he had wholly failed to do so, and had been discharged by Mr. Kimball.  After his failure, through the purchaser's own efforts, Mr. Kimball not knowing who the plaintiff's customer was, the parties met and themselves agreed upon the terms of a sale.  *Leonard* v. *Eldridge*, 184 Mass. 594.  The negotiations between the plaintiff and the Lincolns had come to an end ; in the language used by the plaintiff in testifying, " they evidently seemed inclined to let the matter drop so far as he knew."  There had been no general, and far less any exclusive employment of the plaintiff by the defendants.  They had full right to make sale of this property to any one whom they pleased, regardless of what efforts the plaintiff might have made ; nor can the plaintiff in such a case recover anything for his unsuccessful efforts.  *Cadigan* v. *Crabtree*, 179 Mass. 474.  The fact that the plaintiff had failed to persuade the purchaser to take the property at one price, is not of itself evidence which would justify a finding that his services were the operating and efficient cause of a subsequent sale at a somewhat lower price which yet was higher than the plaintiff had succeeded in obtaining. Nor is there any question possible as to the defendants' right to terminate the plaintiff's employment.  They could have done this, acting in good faith, even if they had known who the plaintiff's customer was, and then had proceeded to deal with him themselves.  *Cadigan* v. *Crabtree*, 179 Mass. 474 ; *S. C.* 186 Mass. 7.

There is no ground on which it can be said that the defendants in throwing over the plaintiff and themselves dealing directly with A. V. Lincoln acted in bad faith within the rule of *Sibbald* v. *Bethlehem Iron Co.* 83 N. Y. 378, as quoted in *Cadigan* v. *Crabtree*, 186 Mass. 7, 13. *French* v. *McKay*, 181 Mass. 485. *Dowling* v. *Morrill*, 165 Mass. 491. They could not have intended to deprive the plaintiff of his commission; for they did not know that Lincoln had been his customer.

We have said nothing about the contention of the defendants that the purchase really was made in the interest of the Boston Elevated Railway Company; for we agree with the counsel for the plaintiff that the ordering of a verdict cannot be supported on this ground.

The Superior Court rightly ruled that on the evidence the plaintiff was not entitled to recover.

*Exceptions overruled.*