[Civ. No. 3271. First Appellate District, Division Two.—February 26, 1920.]

FRED A. HAUN, Respondent, v. J. J. ROSENMAYER, Appellant.

[1] BROKER'S COMMISSIONS — WHEN EARNED — PRODUCING CAUSE OF SALE.—It is not necessary that a broker should personally conduct negotiations between his principal and the purchaser or that he should be present when the bargain is completed; it is sufficient that his efforts are the producing cause of the sale and that through his agency the purchaser is brought into communication with the seller, although the parties then negotiate in person.

[2] ID.—DOING BUSINESS UNDER FICTITIOUS NAME — FAILURE OF PARTNERSHIP TO FILE CERTIFICATE—WHEN NOT DEFENSE.—In an action to recover commissions upon the sale of certain goods, the fact that plaintiff's assignor is a copartnership doing business under a fictitious name which does not disclose the names of all the partners and that it has not filed a certificate as required by section 2466 of the Civil Code does not constitute a defense to the action where the services for which recovery is sought were rendered outside the state and the partnership did not transact business in the state.

[3] ID.—BROKER AS PRODUCING CAUSE OF SALE — ADMISSIBILITY OF CORRESPONDENCE TO PROVE—IGNORANCE OF DEFENDANT IMMATERIAL. In an action to recover commissions upon the sale of certain goods, correspondence showing that the broker was the producing cause of the sale is admissible in evidence, notwithstanding the defendant was not a party to such correspondence and was ignorant of the facts therein shown.

[4] ID.—ACTION IN QUANTUM MERUIT—ERRONEOUS JUDGMENT FOR INTEREST.—In an action in *quantum meruit* to recover commissions

---

1.  When broker's commission is earned, notes, 28 Am. St. Rep. 546; 139 Am. St. Rep. 225.

upon the sale of certain goods, the allowance of interest upon the amount found to represent the reasonable value of the services rendered for any period before judgment is erroneous.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

Geo. H. Wilson and J. W. Hocker for Appellant.

Hollzer & Greenberg for Respondent.

LANGDON, P. J.—This is an appeal by the defendant J. J. Rosenmayer from a judgment against him alone in the sum of $3,534.96 for commissions upon the sale of goods. The plaintiff is the assignee of Sutphen & Company, a co-partnership engaged in business as brokers and manufacturers' agents in the city of Chicago. The defendant was engaged in Los Angeles in the business of buying cauliflower from the farmers and packing the same in barrels and then selling in the eastern markets in carload lots. The defendant paid commission to the plaintiff's assignor upon a sale of five carloads to Libby, McNeill & Libby, a Chicago buyer, and the dispute is over the commission upon an additional eighty cars sold to the same purchaser a day or so later. The appellant attacks the finding of the trial court to the effect that the plaintiff's assignor rendered services to the defendant as a broker in securing the purchaser for these additional eighty cars of cauliflower. This finding is based upon the correspondence between the parties, which is set out in the record. It can serve no useful purpose to quote that correspondence in full here, and in the interest of clarity we shall merely call attention to those portions which justify the conclusion of the trial court. On November 18, 1916, following up other correspondence, the brokers telegraphed the defendant as follows: "Have buyer several cars cauliflower seven dollars shipping point. Will inspect, accept and pay for flower Los Angeles. Wire number of cars and where inspector now at San Francisco can meet you. If only one car let Budlong have it, terms sight draft. If more wire us." To this defendant replied on November 19th: "Am able to load two cars a week at eight dollars per

barrel subject to changes. Will ship Budlong one car also at eight dollars. Demand big, market higher. If inspector comes to Los Angeles will make arrangements.'' On November 19, 1916, the brokers telegraphed to the defendant that they had ''sold Libby McNeill five cars or more if available same price and terms. Their Mr. Eustace now California will see you early part week.'' To this telegram defendant replied: ''Will ship Budlong car next week. Will be able to ship later all you can sell. Too early yet, don't guarantee future prices.'' On November 21, 1916, Sutphen & Co. wrote the defendant: ''Referring to the Libby McNeill and Libby cauliflower deal, they will buy five cars at $8 Los Angeles, if you can supply them or they will take one car this week at $8.00, then wire us price on balance. Their man will be with you today or tomorrow. In your telegram you say that you can give us all the cauliflower we can sell and that it is too early yet to quote price . . . '' Libby, McNeill & Libby wired their agent at Los Angeles on November 21st: ''Rosenmayer quotes thro Sutphen forty-five gallons cauliflower in brine eight dollars Los Angeles, need badly, see Rosenmayer today, inspect cauliflower, buy all possible if good color. . . . '' On November 22, 1916, Mr. Beilfus, the Los Angeles agent of Libby, McNeill & Libby, in accordance with these instructions, called on the defendant and bought five cars at eight dollars; on November 23d, he bought thirty cars at eight dollars and twenty-five cents and on November 24th, he bought fifty cars at eight dollars and fifty cents. On November 23d, Sutphen & Company wrote to the defendant: ''Libby, McNeill & Libby have sent a man to see you. They will buy five cars, more if you have them at the same price. Both Budlong and Libby have agreed to have the cauliflower shipped at once.'' On November 27, 1916, Sutphen & Co. wrote defendant again: ''We are pleased to learn that you are able to supply Libby, McNeill & Libby with 70 or 80 cars cauliflower. They have informed us over the 'phone of the terms and conditions as set forth in the attached sales ticket. Presume they have cleaned up everything you have outside of the order for Budlong . . . ''

The defendant paid the commission upon the first five cars only and refused to pay the commission on the eighty cars sold subsequently. The complaint was in two counts; first, upon an express contract and agreed commission of five per

cent, and second, for the reasonable value of the services rendered.

The contention of the appellant that this evidence does not show the plaintiff's assignor entitled to commissions upon the eighty cars of foodstuff is without merit. It is admitted that Sutphen & Company negotiated the sale of the first five carloads to Libby, McNeill & Libby. It also appears that there was a prospect then of selling more goods to this same purchaser, and that Sutphen & Company advised the defendant that the negotiations would be carried on by the representative of the purchaser, who was then in California. These negotiations were carried on and a sale consummated by said representative. It, therefore, appears that while the details of the sale were arranged between the representative of the purchaser and the seller in Los Angeles, the transaction was made possible by the efforts of the brokers in Chicago in negotiating with the buyer, and the buyer's direction to its agent to arrange the details of the transaction with the seller was in accordance with its arrangement with the broker. It therefore appears that the findings of the trial court upon this question find abundant support in the evidence, and they cannot be disturbed by us. [1] It is not necessary that a broker should personally conduct negotiations between his principal and the purchaser or that he should be present when the bargain is completed; it is sufficient that his efforts are the producing cause of the sale and that through his agency the purchaser is brought into communication with the seller, although the parties then negotiate in person. (*Pierce* v. *Nichols,* 50 Tex. Civ. 443, [110 S. W. 206, 208]; *Keys* v. *Johnson,* 68 Pa. St. 42; *Hill* v. *McCoy,* 1 Cal. App. 159, 166, [81 Pac. 1015]; *Levy* v. *Wolf,* 2 Cal. App. 491, 495, [84 Pac. 313]; *Justy* v. *Erro,* 16 Cal. App. 519, 522, [117 Pac. 575].)

[2] Defendant also alleges as a defense to this action that plaintiff's assignor is a copartnership, doing business under a firm name and style which does not disclose the names of the several partners; that such a designation constitutes a fictitious name, and that the partnership failed to file a certificate with the county clerk of Los Angeles County showing the names in full and places of residence of all the members of the partnership, as required by section 2466 of the Civil Code, and that the transactions sued upon occurred in the county of Los Angeles; that, therefore, the

plaintiff is barred from maintaining the action. The section of the code referred to expressly applies to "every partnership transacting business in this state under a fictitious name." The trial court found and the evidence clearly was to the effect that the plaintiff's assignor did not transact business in this state. The testimony of the members of the firm of Sutphen & Company was that that company never had an office in California and that the company transacted business in Chicago for packers in California; they had no agents in the state of California, and their orders from people in Chicago were mailed to packers in California. The appellant complains that the court did not find expressly upon this special defense because it did not find whether or not Sutphen & Company were doing business un der a fictitious name. The trial court found that the ser vices for which recovery is sought in this action were rendered outside of the state of California. The record contains no evidence that we could discover which would support a finding upon this issue in favor of the appellant. The only evidence in the record upon the subject is the evidence above referred to which is contrary to the contention of the appellant. It is said in *People* v. *McCue*, 150 Cal. 195, 200, [88 Pac. 899, 901]: "It is well settled that a failure to find upon some issue made by the answer, a finding upon which would merely have the effect of invalidating a judgment fully supported by the findings made, will not be held ground for reversal, unless it is shown by statement or bill of exceptions that evidence was submitted in relation to such issue." It is true that the business of closing the contract between the defendant and the purchaser was done at Los Angeles; but the business of securing the purchaser, which is the service for which the suit is brought, and the business in which Sutphen & Company was engaged, was done in Chicago.

[3] Appellant objects to the introduction in evidence of certain correspondence between the purchaser and the broker, which correspondence clearly shows that the purchaser was secured by the broker. The objection to this evidence is that it was not binding upon the defendant. Similar objection is made to the introduction of a telegram by the purchaser to its agent, stating that the defendant had quoted prices to it through Sutphen & Company. It is urged that as there is no evidence that the agent told defendant that he had

been sent by Sutphen & Company, this evidence of that fact is inadmissible. The objections made in these connections are answered by the language of the case of *Sussdorff* v. *Schmidt,* 55 N. Y. 319, 323, where it is said that if the broker was the producing cause of the sale, his right to compensation would not be affected by the circumstance that the defendants were ignorant of it at the time. This rule has also been stated by the appellant court of our state in the case of *Justy* v. *Erro,* 16 Cal. App., at page 522, [117 Pac. 576].

[4] The other errors urged by appellant we consider to be without merit, except the contention that the trial court erred in allowing interest upon the judgment from June 1, 1917. The judgment was rendered on July 23, 1918. A finding was made that the reasonable value of the services rendered by the plaintiff's assignor is $3,378.55. Judgment is given for this amount plus interest from June 1, 1917, upon the second count of the complaint, which is a count in *quantum meruit.* It has been expressly decided in the case of *American-Hawaiian etc. Co.* v. *Butler,* 17 Cal. App. 764, 768, [121 Pac. 709], that this is improper. The reasons therefor are set out in that opinion. In the present case the allegation regarding the reasonable value of the services was controverted as in the case of *American-Hawaiian etc. Co.* v. *Butler, supra,* and the reasoning of that case applies here. The allowance of interest before judgment was therefore erroneous.

The judgment is modified so as to eliminate the interest from June 1, 1917, until date of judgment. When this amount is deducted the judgment will be for $3,378.55, the reasonable value of the services, together with interest thereon from date of judgment until paid at the rate of seven per cent per annum, together with the necessary costs and disbursements incurred in this action, amounting to the sum of $36.70. As so modified, the judgment is affirmed.

Nourse, J., and Brittain, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 20, 1920.

All the Justices concurred, except Shaw, J., who did not participate.