[L. A. No. 6366.  In Bank.—June 17, 1920.]

## LON S. McCOY, Respondent, v. ZAHN CORPORATION (a Corporation), Appellant.

[1] Broker's Commissions — Procuring of Loan — Essentials of Recovery.—An agent employed to procure a loan in order to recover a commission must have placed his client in touch with a customer ready, able, and willing to make the loan, or must have carried on negotiations to such a point as to secure from the prospective lender an unqualified agreement to make the loan on the terms proposed.

[2] Id. — Negotiations With Prospective Purchaser — Commission Unearned.—The fact that a broker employed to procure a loan, who had been informed that other brokers than himself were also employed and that the commission would be paid to the first one who produced the money, advised the borrower that he was negotiating with the party who subsequently made the loan, is insufficient to entitle him to the commission, where he did not introduce the lender to the borrower nor secure from the lender an agreement to make the loan.

. APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Reversed.

The facts are stated in the opinion of the court.

J. Wiseman Macdonald for Appellant.

Paul H. McPherrin for Respondent.

SLOANE, J.—This action was brought to recover eight hundred dollars as commissions for services of plaintiff rendered pursuant to employment in assisting the defendant to procure a loan secured by mortgage on real property. The trial court found that the plaintiff had been employed to procure for the defendant a loan of forty thousand dollars to be secured by mortgage on real property in the city of Los Angeles owned by the defendant corporation and known as the Gordon Apartments, defendant agreeing to pay the plaintiff for his services in "so securing such customer ready and willing to make said loan, the sum of two

---

1. Performance entitling loan broker to commission, note, Ann. Cas. 1918C, 609.

per cent on the amount of said loan, or the sum of eight hundred ($800) dollars." It was further found by the court that "plaintiff in this action fully rendered and performed all the services for which he was employed and procured a customer ready, able, and willing to make the loan of forty thousand dollars desired by the defendant corporation on the same terms specified in his employment and on the security offered by defendant, viz., a first mortgage on the Gordon Apartments, and that said plaintiff was the means of bringing the said E. W. Hadley, the customer so secured by him, and the defendant corporation together in pursuance of his employment, according to the terms thereof, and that his efforts in so bringing the said Hadley and defendant corporation together were the proximate and procuring cause resulting in the making of the loan of the said Hadley to defendant corporation."

The judgment was for plaintiff in the amount demanded, and it is from this judgment that the appeal is taken. The grounds stated on the appeal are, first, the insufficiency of the evidence to establish the employment; and, second, the insufficiency of the evidence to support the finding that the plaintiff was the efficient agent in bringing the lender and borrower together, or in procuring the loan. The finding as to the employment is not very seriously controverted and is one clearly justified by the evidence, and it may be dismissed from further consideration.

The finding that the plaintiff brought the parties together and secured the proffer of the loan is the real issue in controversy. The doubt on this point does not arise upon a conflict in the evidence but from a challenge of the legal conclusions drawn by the court from the uncontroverted facts. One significant fact is that several agents were engaged in trying to place this loan for defendants, and plaintiff was informed during the negotiations that other agents than himself were employed and that the commission would go to the agent who first brought in the money. The plaintiff himself testified: "Hector N. Zahn told me at that time there were other agents working on the loan, and the first one who came in with the money would get the commission." The agents concerned in these negotiations other than the plaintiff McCoy and one Allen who was associated with him were F. A. Pattee,

'A'. W. Ross and the firm of Rowan & Company. These agents actually closed the deal by obtaining the lender's final ratification of the loan and by securing an escrow deposit of the money or check for the amount of the loan. It was in response to a notice from some of these parties and not the plaintiff that the defendants met Mr. Hadley and made the loan and thus finally closed the deal.

While these facts are not disputed, it is contended in behalf of plaintiff that it was he who first brought this application for a loan to the attention of Hadley, and that prior to any negotiations between Hadley and the other agents Hadley had expressed himself favorably toward this loan and had, in effect, agreed to take it if on personal inspection he was satisfied with the security. It appears without dispute that Hadley, who lived in San Francisco, communicated about May 6, 1915, with several real estate firms in Los Angeles, including the various agents mentioned in this deal, by a circular letter in which he inquired about the demand for loans and stated that he was in the market to place a considerable amount of money on Los Angeles property. On May 10th plaintiff wrote to Hadley offering to aid him in placing loans. On September 29th Hadley wrote to plaintiff asking to be advised as to applications for loans that he might have to submit. On October 7th plaintiff for the first time mentioned the Gordon Apartments' application for forty thousand dollars. He had not then any agency from the defendants to act in the matter but had learned of their desire to secure a loan from his associate Allen. It is not necessary to follow the details of the negotiations. Plaintiff went to considerable pains to present the Gordon Apartments' loan in a favorable light. On October 14th Hadley sent a letter and telegram informing plaintiff that he thought he could take care of the forty thousand dollar loan and he would soon be in Los Angeles to investigate. It was after this, on the 20th of October, that the plaintiff first met representatives of the defendant corporation and procured authority to act for them in obtaining the loan. He informed them that he had a prospective customer, but did not then mention the name. On the following day he claims to have read to them a telegram and letter from Hadley, including the signatures, and to have given them

other information as to his negotiations, but did not give them the documents to read. It was on this occasion that he was informed that there were other agents working on the loan and that the first to come in with the money would get the commission. Learning from a son of Hadley that the latter would be in Los Angeles on the 27th of October, plaintiff communicated with defendants, told them his client had not yet shown up, and requested them to wait until he had heard from him, and asked if everything was O. K. He was answered in the affirmative and was told that they were anxious to get the money. On October 29th Hadley called upon the plaintiff at his office and refused the latter's offer to show him the Gordon Apartments property. Hadley further said that he had already been to the Gordon Apartments and had investigated them, but had a little more investigating to do, and that he would let the plaintiff know about it in the afternoon or soon after. It developed later that Hadley had already inspected the property with Pattee, one of the other agents. Plaintiff testified that on the evening of October 29th he telephoned defendants that his client had been at the office that morning; that he had said he had a little more investigating to do, and that after he completed it he would make up his mind in a few minutes and let him know soon thereafter. Plaintiff further informed them that he would try to get an answer from his client the next day and not later than Monday, the 1st of November. He claims they told him they would let the matter rest in that way. Testimony was given by defendants, which was undisputed, that plaintiff stated in his telephone conversation that his man was in the office that morning and promised to come again in the afternoon, but had not come. This was the last communication that plaintiff had with either Hadley or the defendants until after the deal was closed through other agents on Monday, the 1st of November, about 4:30 P. M. Up to this time the defendants had not met Hadley. If they knew his name there is no evidence that they knew where to find him and he had not agreed with plaintiff to make the loan.

In the meantime, the undisputed evidence shows that Pattee had learned about the same time plaintiff did of Hadley's desire to place loans in Los Angeles. He later

learned of the Gordon Apartments' application through his associate Ross, who had been authorized by defendants to find them the money. On the 14th of October Hadley telephoned Pattee that he expected to be in Los Angeles very soon. On October 21st Pattee reported to Hadley a number of applications for loans, including the Gordon Apartments property. On October 27th Pattee and Hadley inspected this property together and saw each other nearly every day thereafter. On November 1st the loan was agreed to and the money placed in escrow. It was Ross, Pattee's associate, who notified the defendants that the money was in escrow and to go down at once and close the deal. The escrow included this loan on the Gordon Apartments and another loan to defendants upon other property. The commissions were divided between Pattee, Ross, and Rowan upon representations made to the defendants by Hadley that Pattee did the work and brought the parties together on the Gordon Apartments' loan.

[1] The law applicable to this sort of agency is well settled. It is clear that the agent in order to recover a commission must have placed his client in touch with a customer, ready, able, and willing to make the loan, or must have carried on negotiations to such a point as to secure from the prospective lender an unqualified agreement to make the loan upon the terms proposed. Such is practically the rule as quoted in appellant's brief from the authorities cited. In *Cone* v. *Keil*, 18 Cal. App. 675, [124 Pac. 548], the court said: "Merely putting a prospective purchaser on the track of property which is on the market will not suffice to entitle the broker to the commission contracted for, and even though a broker opens negotiations for the sale of property, he will not be entitled to a commission if he finally fails in his efforts, without fault or interference of the owner, to induce a prospective purchaser to buy, or make an offer to buy, notwithstanding that the owner may subsequently, either personally or through the instrumentality of other brokers, sell the same property to the same individual at the price and upon the terms for which the property was originally offered for sale."

In the case of *Massie* v. *Chatom*, 163 Cal. 772, [127 Pac. 56], this language was quoted with approval:

" 'The contract of the broker is to negotiate a sale; that is, to procure a valid contract, to purchase, which can be enforced by the vendor if his title is perfect; or if he does not procure such contract to bring the vendor and the proposed purchaser together, that the vendor may secure such a contract, unless he is willing to trust to an oral agreement.' . . .

" 'The readiness and willingness of a person to purchase the property can be shown only by an offer on his part to purchase; and unless he has actually entered into a contract binding him to purchase, or has offered to the vendor, and not merely to the broker, to enter into such contract, he cannot be considered a purchaser.' "

We do not find that the authorities quoted by respondent distinguish the application of this rule. The opinion in *Just* v. *Erro*, 16 Cal. App. 519, quoting from Mechem on Agency, that it is not necessary that the broker should personally have conducted the negotiations between his principal and the purchaser leading to the sale, nor that he should have been present when the bargain was completed, "or even that the principal should, at the time, have known that the purchaser was one found by the broker," refers to a condition where the broker has brought the vendor and vendee together and then they contract for themselves. The rule as quoted from Ruling Case Law (4 R. C. L., "Brokers," secs. 46, 57, 58) holds that where the services of the broker, as well as those of another agent, have contributed generally to the successful termination of the negotiations in question that "If the success of the transaction is directly attributable to the broker originally employed, his right to his commissions cannot be defeated by the mere fact that the negotiations were conducted, or the transaction finally consummated, through the medium of another broker." In this action the very controversy is as to whose agency actually brought about a meeting of the minds upon the proposed loan, and the contention here is that it does not appear that the final decision of the lender to accept the loan was effected through the influence or agency of the plaintiff. However nearly he may have brought him to a favorable decision, if the negotions were broken off before a decision was reached and a final decision is brought about by another agent, the latter

will be entitled to the commission. It may also be conceded as a correct statement of the law that "if the broker is to merely find or procure a purchaser, it is not necessary that he should be present at the time the negotiations are entered into with the purchaser, or be an active participator in the consummation of the contract, provided he can show that the same was effected through his agency, and that the parties were brought together and the deal resulted from his acts as its procuring cause." But how can it be said in this case that the lender and borrower were brought together by the previous negotiations through the plaintiff when he failed to bring the parties together or in any way to introduce them to each other, and it is shown that this office was performed by other agents who had been employed under a contract and were negotiating with the same party?

[2] We do not see how, under the evidence here, it can be held that plaintiff met either of the requirements of his employment. It is certain that he at no time obtained an agreement from Hadley to make this loan. On the occasion of his last communication with the defendants, and after he had interviewed Hadley for the last time, Hadley had told him that he wanted to make further investigation, that he would make up his mind and let him know later, and plaintiff telephoned defendants that his customer had not shown up as agreed and asked them to wait on him until Monday. This was on Friday, the 29th of October. They did wait until Monday, as the deal through the other agents was not closed until 4:30 P. M. on Monday, November 1st, and no further word had been received by them from the plaintiff up to that time. Clearly, the plaintiff, through his negotiations with Hadley, had not brought him to the "sticking point" of obtaining any final promise or agreement from him. Neither could he be said to have brought the parties together. Conceding that he had disclosed Hadley's name to the defendants as the party with whom he was negotiating, which is denied by defendants' witnesses, it does not appear that he had more than casually mentioned the name in the reading of a telegram and in a conversation relating to the loan, and he had at no time given Hadley's Los Angeles address or told defendants where they could find him or

attempted in any way to bring the parties into personal contact. On the contrary, a fair inference from his conduct was that he was intending to carry negotiations through by himself to an acceptance of the loan. There is no justification for reaching a conclusion that the defendants would have met Hadley had they not been brought together by the other agents or that Hadley would have made the loan without their agency in the matter. It was understood that the agent who first produced the money would receive the commission. It seems to us that this was a controlling feature of the case. The defendants were anxious for the money. They had been in the market for this loan a number of months; they had to meet an outstanding mortgage on their property in the very near future; they had placed the procuring of the loan with various agents, and it was understood with plaintiff that the first agent who came with the money would receive the commission. These other agents produced the customer and the money. We do not think, under the circumstances, that it was incumbent upon defendants to trace back the negotiations of the different agents to ascertain who saw the customer first. The controlling fact was who saw him last and brought him to a favorable decision. Whatever may be said of the conduct of the lender in leading the plaintiff to believe that if he made the loan he would close it through plaintiff, no bad faith is attributable to defendants, and they are not responsible for any bad faith on the part of the customer. They unite in denying that they even knew Hadley was plaintiff's customer; but accepting plaintiff's contention and the court's finding that the latter had disclosed Hadley's name, the last word they had received from plaintiff three days previous to the closing of the deal was that his customer had not then made up his mind but had promised to let him know soon, and had not appeared, and up to the time that Pattee and Ross notified them they had the money in escrow, no further word was had from plaintiff.

Under this condition of the law and the facts it becomes immaterial that the plaintiff may have notified defendants that he claimed the commission before the money had actually been paid out to the other agents. The decision of the case rests upon the conclusion that the evidence

does not show that the plaintiff was the efficient agent in procuring the loan.

Judgment is reversed.

Wilbur, J., Lennon, J., Shaw, J., Lawlor, J., Olney, J., and Angellotti, C. J., concurred.

Rehearing denied.

Angellotti, C. J., Shaw, J., Lawlor, J., and Sloane, J., concurred.