[Sac. No. 4333. In Bank.—February 19, 1930.]

W. L. HILL, Respondent, v. EDNA L. KNIGHT et al., Appellants.

R. M. Rankin for Appellants.

J. L. Royle for Respondent.

THE COURT.—The judgment for the plaintiff in this cause was reversed by the District Court of Appeal, Third District, Mr. Justice Plummer writing the opinion. A petition for a hearing in this court was granted. After further consideration of the record we are satisfied with the reasoning and conclusions of the District Court of Appeal and adopt the same as the opinion of this court. It is as follows:

"This appeal is from a judgment in favor of the plaintiff after motion for new trial had been denied by the court. The action was for recovery of commissions alleged to be due the plaintiff on account of the sale of certain real estate; was tried before a jury, and resulted in a verdict in favor of the plaintiff.

"The plaintiff was a real estate broker doing business in Sonoma county, and on or about the 19th day of November, 1923, the defendants executed and delivered to the plaintiff a writing authorizing the plaintiff, for a period of thirty days, to act as agent in making sale of certain real and personal property described and referred to in said instrument. Time was made the essence of the agreement or authorization, and under its terms it expired thirty days after date. On the 11th day of December, 1923, R. M. Rankin, an attorney for the defendants, acting under instructions from one of them, wrote the plaintiff a letter extending the authorization for thirty days from its expiration date, with the understanding that there was no change in price and that the contract or authorization did not confer any exclusive rights upon the plaintiff. The selling price of the property mentioned in the writing executed and delivered to the plaintiff fixed the real estate at $35,000, which price included all machinery, farm implements, horses, harness and saddles then on the property. The writing also included

an authorization to sell 250 head of cattle, more or less, at $30 per head. The plaintiff was to receive five per cent commission on the selling price of the real estate, and $1 per head for the cattle sold. The terms of sale were also set forth in the authorization, and the real estate consisting of 2823.93 acres, sufficiently described by reference to deeds, etc. The record shows that no sale was effected under the authorization to which we have referred, nor during the period of time mentioned in Rankin's letter extending the operation of the agreement for thirty days on and after December 9, 1923. As we have said, time was made the essence of the original agreement. In the extension of the authorization for thirty days mentioned in the letter of Mr. Rankin to the plaintiff, it is specifically set forth that the heirs, which means the persons who executed the authorization, will, if they have the opportunity, sell the property, or that they desire to sell the property. This, of course, is only a statement of a right which the heirs possessed during the entire period of time heretofore mentioned, but constituted a further notice to the plaintiff. No sale of the ranch having been effected, it appears that on or about May 25, 1924, one of the defendants, Mrs. Edna L. Knight, wrote a letter to the plaintiff, which, among other things, contained the following: 'In regard to the stock ranch, so far as I know it has never been listed with anyone but yourself and while the heirs would not renew the option, if you consummated a sale, you would be protected in your commission. I think the price would still hold good with the exception of the cattle which of course would be revalued. At present day prices I believe cattle will be worth more money in the near future and then of course we would not sell either ranch or cattle separately. One depends on the other. The only assurance I can give you is that if you sell the property you will be protected in your commission —the price the same as that given you with the exception of the stock as I stated above.' In this letter, as shown by the excerpt, it was stated that the heirs would not renew the option, that is the agreement to which we have referred as having been executed and delivered to the plaintiff on or about the 9th day of November, 1923, authorizing the plaintiff, as agent, to make sale of the property therein mentioned. The letter, however, did state that if the plaintiff

consummated a sale, he would be protected in his commission. The information is also imparted in the letter that any sale made by the plaintiff must be of both the ranch and the cattle; that they would not consider separate sales. The record shows that there was no further communication relative to the sale of the property mentioned in the authorization between the plaintiff and any of the defendants. However, on or about the 30th of July, 1924, a little over two months after receipt of the letter to which we have just referred, it appears that the plaintiff had an interview with Richard Deming, Jr., at plaintiff's office in Sonoma county, but did not succeed in effecting a sale. On the 4th day of August thereafter the record shows that Richard Deming, Jr., called on the defendants in relation to buying the real property heretofore referred to, and before any negotiations were had with him by the defendants, they inquired particularly if he had seen the plaintiff Mr. W. L. Hill, and being informed that he had not, and had had no negotiations with him, the defendants entered into negotiations with Richard Deming, Jr., for the sale of the real estate heretofore referred to and succeeded in selling said property to him for the sum of $32,000. Thereafter, the plaintiff learning of the sale of the real property made demand for payment to him of commissions in the sum of $1,600, and payment being refused, the plaintiff instituted this action.

"Upon this appeal it is insisted: First, that the defendant's demurrer to the plaintiff's complaint should have been sustained; second, that the plaintiff had no written contract for the sale of the premises referred to; third, that the court erred in denying the defendants' motion for nonsuit, and fourth, that the court erred in its instructions to the jury.

For the reasons hereinafter mentioned we do not deem it necessary to consider the defendants' demurrer to the plaintiff's complaint, nor do we need to consider the terms and conditions of the alleged contract further than to state that the plaintiff was not authorized to make any separate offer of the property mentioned therein. The letter dated May 25, 1924, which must be the basis of this action if plaintiff had any rights whatever, specifically informed the plaintiff that the real estate and the cattle must be sold together, or, to use the language of the letter, 'one depends on the other.' The letter also informed the plaintiff that

the price of the stock included in the sale would be a matter of further consideration. In other words, the letter, if it amounted to an authorization at all, simply authorized the plaintiff to offer the property for sale, accept a bid, and refer the same to the defendants, as the selling price of the cattle was not fixed. None of the other defendants herein signed the letter to which we have referred, but it appears that their attorney, in open court, stated in effect that if the letter of May 25, 1924, bound the defendant Mrs. Edna L. Knight, it bound all of the defendants.

"It will be noticed, further, that the only promise made to the plaintiff was in the use of these words in the letter referred to, to-wit, 'if you consummated a sale, you would be protected in your commission.'

"Did the plaintiff bring himself within the terms of this letter, or even within the terms of the original authorization, and did the court err in denying defendants' motion for a nonsuit? These questions can be answered more readily after setting forth the testimony of the plaintiff concerning all that he did in the matter. The plaintiff testified that he saw Mr. Deming on what is known as and called the Canfield ranch, near Geyserville; that Mr. Deming was contemplating buying that ranch; that thereafter he wrote a letter to Mr. Deming concerning the property belonging to the defendants, and asked Mr. Deming to come to his office. It appears that the ranch known as the Canfield ranch, and the real property known as the Caldwell property, belonging to the defendants, were some distance apart. That in response to the letter just referred to Deming appeared at the office of the plaintiff, and they talked over the ranch belonging to the defendants; that the plaintiff told him who owned it, and 'went through the details regarding it.' The plaintiff testified that he told Mr. Deming he could see the president of the Chamber of Commerce at Santa Rosa; also, a Mr. Doyle, president of the bank there; he had a mortgage on the place for $12,000. The witness then testified as follows: 'And after Mr. Deming spent some two hours in the office he got up and said, "Well, now, I am not interested in the ranch," he said, "I don't care to figure on it, and," he said, "must find a cheaper ranch"; and I said, "Well, now; you haven't seen it; I will take you up there and show it to you." He says, "No," he said, "I would

be losing my time as well as yours.'' So I disregarded all my data on it and threw it in the wastebasket, and disregarded him. A few days later I learned that Mr. Deming had bought the ranch, so I immediately wired the Purkitt heirs that my man had bought it and I expected to be protected on my commissions. Then I looked up the deeds. It was July 30th, the time that Deming came into my office, and the ranch deal was made on August 4th.' While there is testimony in the record showing what Mr. Deming, and also a man by the name of Mr. Adams, who appears to have been interested with Mr. Deming, did after the interview with the plaintiff on July 30th, there is nothing in the record showing that the plaintiff took any further action in relation to the sale of the property mentioned in the original authorization, or in relation to the sale of the real property known as the Caldwell ranch belonging to the defendants. No effort was made by him to communicate with the defendants and inform them that either Richard Deming or Mr. Adams had been in plaintiff's office, or that he had given them any data or information in relation to the property. The plaintiff appears to have acted in accordance with his own statement, that he disregarded him (referring to Mr. Deming), and threw all his data in the wastebasket. As stated heretofore, the defendants made inquiry of Mr. Deming as to whether he had had any negotiations with the plaintiff Hill, or had seen the plaintiff Hill in relation to the property. We refer to this because it shows that the defendants acted in good faith, and brings them within the language of the supreme court of Massachusetts in the case of *Smith* v. *Kimball,* 193 Mass. 582 [79 N. E. 800] : 'The fact that the plaintiff had failed to persuade the purchaser to take the property at one price, is not of itself evidence which would justify a finding that his services were the operating and efficient cause of a subsequent sale at a somewhat lower price which yet was higher than the plaintiff had succeeded in obtaining. Nor is there any question possible as to the defendants' right to terminate the plaintiff's employment. They could have done this, acting in good faith, even if they had known who the plaintiff's customer was, and then had proceeded to deal with him themselves. (*Cadigan* v. *Crabtree,* 179 Mass. 474 [88 Am. St. Rep. 397, 55 L. R. A. 77, 61 N. E. 37].) There is no ground

on which it can be said that the defendants in throwing over the plaintiff and themselves dealing directly with A. V. Lincoln, acted in bad faith.' (Citing a number of authorities.) 'They could not have intended to deprive the plaintiff of his commission; for they did not know that Lincoln had been his customer.' Disregarding that portion of the quotation relative to knowledge of the plaintiff's customer, the latter portion of the quotation is directly applicable here. The plaintiff took no means and made no effort to inform the defendants that he had a prospective customer or that he had even mentioned to Richard Deming that the ranch was for sale. The mere fact that the plaintiff called the attention of the property to Richard Deming is not sufficient to enable him to prevail in this action. As said in *Naylor* v. *Ashton,* 20 Cal. App. 544 [130 Pac. 181]·: 'It must further appear that the broker had performed the duty assumed by him within the time limit in his contract, or within such extension of time as may have been granted by his employer. If he failed to do that, he is not entitled to the commissions, even though he made efforts to sell property, and first called to it the attention of the party who ·subsequently made the purchase, unless the delay was caused by the negligence, fault or fraud of the owner.' (Citing *Zeimer* v. *Antisell,* 75 Cal. 509 [17 Pac. 642] ; *Ayers* v. *Thomas,* 116 Cal. 140 [47 Pac. 1013] ; *Ropes* v. *Rosenfels Sons,* 145 Cal. 671 [79 Pac. 354] ; *Hicks* v. *Post,* 154 Cal. 22 [96 Pac. 878] ; *Brown* v. *Mason,* 155 Cal. 155 [21 L. R. A. (N. S.) 328, 99 Pac. 867].) To the same effect is the case of *Cone* v. *Keil,* 18 Cal. App. 675 [124 Pac. 548], where it is said: 'Merely putting a prospective purchaser on the track of property which is on the market will not suffice to entitle the broker to the commission contracted for, and even though a broker opens negotiations for the sale of the property, he will not be entitled to a commission if he finally fails in his effort, without fault or interference of the owner, to induce a prospective purchaser to buy or make an offer to buy, notwithstanding that the owner may subsequently, either personally or through the instrumentality of other brokers, sell the same property to the same individual, at the price and upon the terms which the property was originally offered for sale.' In *Stephens* v. *Anderson,* 36 Cal. App. 199 [171 Pac. 811], a case where the owner made sale

to a purchaser to whom an agent had mentioned the property, and also where the agent had failed to communicate with the owner and inform the owner that he had called the attention of the property to the person to whom the owner thereafter sold, the court held the agent not entitled to commissions and in so doing used the following language, which is according to the facts of this case: 'There was no evidence that Stephens communicated to her any offer to purchase the property, and in these particulars we think there was a failure of proof necessary to sustain the plaintiff's case. We think the rule is fundamental and well understood that before an agent can be said to have earned a commission, he is required to show that he produced to the vendor a purchaser ready, able and willing to buy, for the price and upon the terms proposed by the vendor in the agency contract. The alleged agency was in nowise an exclusive agency, and under the conditions shown, Mrs. Anderson had the right to deal independently with anyone who desired to purchase directly from her,' etc.

"In the case of *Brown* v. *Mason, supra,* a case which we have heretofore cited, the rule is affirmed that an agent, by merely calling the attention of the property to one who subsequently purchases the same is not entitled to commissions unless there is some fault or fraud on the part of the owner.

"In *McCoy* v. *Zahn Corporation,* 183 Cal. 191 [191 Pac. 20], the quotation which we have taken from *Cone* v. *Keil, supra,* is set forth and approved.

"In the case of *Rosenfield* v. *Wall,* 94 Conn. 418 [9 A. L. R. 1189, 109 Atl. 409], a number of cases are cited affirming the rule which we have set forth, and then, in the annotations to that case, beginning on page 1194, a number of cases are quoted showing under what circumstances an owner may make sale without being liable to a broker who has performed acts similar to those testified to by the plaintiff in this cause.

"The respondent calls our attention to the following language found in 4 California Jurisprudence, 605: 'To entitle a broker to his commissions as the procuring cause of a sale, it is not necessary that he should have personally conducted the negotiations between his principal and the purchaser, leading to the sale, nor that he should have been present

when the bargain was completed, nor that the principal, at the time, should have known that the purchaser was one found by the broker. It is indispensable, though, that the broker was the procuring cause of the sale, so where it appears that the seller and buyer were for the first time brought together by the broker, duly authorized to act for the seller, and the sale was subsequently consummated by the seller and buyer acting independently of the broker, the broker not having abandoned his agency, and the seller not having revoked the broker's authorization or done any act from which a revocation might be implied, the inference is a reasonable one that the sale, under such circumstances, is effected through the broker's agency as a procuring cause.' The respondent relies upon the first sentence of the above quotation, but a reference to the authorities cited in the subjoined note shows that the contracts upon which that statement, or that portion of the quotation is based, were entirely different from the contract under which the plaintiff was acting, assuming that the original authorization was still in full force and effect.

"In the case of *Justy* v. *Erro,* 16 Cal. App. 519 [117 Pac. 575], one of the cases cited to support the statement contained in the first sentence which we have quoted from 4 California Jurisprudence, the contract reads as follows: 'This contract to remain in force for a period of ninety days from the date hereof, and thereafter until written notice is given to cancel, and if sale is made by me or through me during the term of this contract, or after the expiration of the same to anyone to whom said property has been submitted by the said N. P. Justy Company, I agree to pay them 2½ per cent commission on said sale.' Nothing of that kind appears in any of the papers under which the plaintiff in this action purports to have acted.

"The next California case cited to support the first sentence of the quotation taken from California Jurisprudence, *supra,* is that of *Briggs* v. *Hall,* 24 Cal. App. 586 [141 Pac. 1067]. The contract, however, in that case reads as follows: 'I reserve the right to sell said property myself, or to sell said property through the agency of anyone else, but I hereby agree that in case such sale be made by myself, or through any other agency, in consideration of their services to pay said Lyman & Briggs a commission of 2 per

cent on said sale.' Here, again, the facts are entirely different and justify the statement of the law as set forth in California Jurisprudence, *supra*, upon a state of facts or upon a contract binding the owner to pay under conditions covered by the language found in California Jurisprudence, which contemplates an entirely different state of facts from those disclosed by the record in the case at bar. The last California case cited in support of the theory that the language which we have quoted from California Jurisprudence is applicable here, is that of *Levy* v. *Wolf,* 2 Cal. App. 491 [84 Pac. 313]. The court, however, in its opinion recites the following: 'In the case at bar, assuming the testimony of the plaintiff to be true, the name of the purchaser was given by the broker to the seller and his offer accepted within the time allowed by the contract, and a sale consummated in accordance with the offer.' That case does refer to some cases with reference to which it was said: 'It is also urged that plaintiff cannot recover because he neither produced a written agreement from the purchaser nor introduced him to the seller,' and in support of this contention cites *Gunn* v. *Bank of California,* 99 Cal. 349 [33 Pac. 1105], and *Mattingly* v. *Pennie,* 105 Cal. 514 [45 Am. St. Rep. 87, 39 Pac. 200], and then the opinion adds: 'In neither of these cases was a written agreement obtained by the buyer, nor was he introduced by the seller to the broker, nor his name disclosed, nor any sale in fact made.' Then follows the language which we have heretofore quoted. And further on in the same opinion the rule is thus stated: 'It is well settled that if the agent introduces or discloses the name of the purchaser, and such introduction or disclosure is the foundation upon which negotiations are begun and the sale effected, he will be entitled to commissions, and this, too, although in point of fact the sale may be made by the owner. In other words, he cannot avail himself of the services, and by making sale through information derived from the agent, deprive the latter of his commissions.' Like the other cases, this discloses a state of facts entirely different from those in the case at bar, and renders respondent's statement of the law and citation of authorities inapplicable.

"Nor is there anything in the case of *Hahn* v. *Rosenmayer,* 46 Cal. App. 353 [189 Pac. 117], which limits the application of the cases which we have heretofore referred

to showing that the plaintiff is not entitled to prevail. In the Hahn case we find this statement: 'It is not necessary that a broker should personally conduct negotiations between his principal and the purchaser, or that he should be present when the bargain is completed; it is sufficient that his efforts are the procuring cause of the sale, and that through his agency the purchaser is brought into communication with the seller, although the parties then negotiate in person'; citing some of the cases to which we have referred and some of the cases which are based upon contracts providing for the payment of commissions if sale is made to anyone to whom the broker has disclosed the property. But the general statement in the case of *Hahn* v. *Rosenmayer,* while a correct statement of the law, is not all of the law applicable to this case because in the case at bar the plaintiff, by his own testimony, stopped the negotiations and made no effort to communicate with the defendants the incident of his conference with Richard Deming, Jr., or that Deming might be considered a possible purchaser.

"Nor do we find anything in the case of *Sessions* v. *Pacific Imp. Co., a Corporation,* 57 Cal. App. 1 [206 Pac. 653], which limits anything stated in the cases which we have referred to showing that mere disclosure of the property is not sufficient upon which to base an action for commissions when the property is thereafter sold by the owner under circumstances such as appear in the case at bar. The Sessions case is too long to admit of any quotations therefrom.

"In view of the fact that the plaintiff's own testimony shows that he did nothing more than has been held insufficient in the case of *Cone* v. *Keil, supra,* which case was affirmed in *McCoy* v. *Zahn, Corp., supra;* that he did not consummate any sale of the property referred to in this action; that he did not have any exclusive agency; that he knew the defendants claimed the right to sell the property themselves; that there was no communication between the plaintiff and the defendants for more than two months after the receipt of the letter under which the plaintiff claimed the right to act; that the plaintiff made no effort to inform the defendants, or any of them, that he had endeavored to interest Richard Deming, Jr., in the purchase of the defendants' property; that the defendants made the sale of the property without any knowledge that the plaintiff had

called it to the attention of the purchaser; that the record shows that the defendants acted in entire good faith without any subterfuge, without any attempt to make a sale of the property so as to deprive the plaintiff of commissions; that the record shows no fraud or delay on the part of the defendants; and in further view of the cases which we have cited applicable to the facts involved in this action, we find no escape from the conclusion that the defendants' motion for a nonsuit should have been granted. ■ The fact that the purchaser, after having his attention called to the property belonging to the defendants, may have come to the conclusion that he did not wish to deal with the agent, or that he could drive a better bargain by dealing directly with the owners, does not alter the situation or give the plaintiff any right of action against the defendants.

■ "As to the alleged errors in the instructions, a general statement in relation thereto will suffice. The jury was instructed upon the theory that the plaintiff, by simply calling the attention of the purchaser to the property and explaining the desirability of its purchase, entitled the plaintiff to a judgment; that such action would constitute a proximate cause, irrespective of whether the vendors, the defendants in this action, had any knowledge that the purchaser was one found by the plaintiff, or that the plaintiff had placed the property in question before the purchaser for consideration, and irrespective of the fact that the sale was consummated by the defendants, when the authority, if any, given to the plaintiff, required him to consummate the sale. Under the facts as disclosed by the record in this case and the contract or authorization under which the plaintiff acted, the California cases which we have cited show that merely calling the attention of a prospective purchaser to the property involved and urging upon him the desirability of its purchase is not sufficient basis to support a judgment awarding any commissions. The cases which we have cited based upon an authorization to a broker such as here presented show the correct theory of the law to be adopted in instructing the jury."

The judgment is reversed.

PRESTON, J., Dissenting.—I dissent. I think the evidence sufficient to sustain the verdict of the jury that plaintiff, acting under a proper authorization, was the procuring cause of the sale.