[Civ. No. 132. Fourth Appellate District.—August 25, 1930.]

E. M. PETERSON, Respondent, v. GUS MATCHINSKE et al., Appellants.

Richard F. Kahle, Stearns, Luce & Forward and Fred Kunzel for Appellants.

Liggett & Liggett for Respondent.

CARY, P. J.—Plaintiff brought this action to recover on a memorandum agreement for a commission for securing a tenant for property owned by defendants. Defendants answered, denying that the memorandum was executed for value received, and as special defenses alleged (1) that the memorandum had been canceled by mutual consent, (2) that at the time of its delivery it was understood that should negotiations then being carried on by plaintiff fail, there should be no liability on the part of the defendants and plaintiff had, prior to instituting action, informed defendants that the deal was off and (3) that plaintiff's efforts were not the procuring cause of the execution of the lease eventually signed. The court made findings in substance following the allegations of the complaint and finding in addition that the services of the plaintiff were the procuring cause in securing the lease as finally executed. Except as indicated above, the court failed to find specifically upon the affirmative defenses. Judgment went for plaintiff and from this judgment the defendants appeal.

Appellants contend the evidence shows without conflict that plaintiff was not the procuring cause of securing the final lease; that the consideration for the memorandum has therefore failed; and further, that appellants are entitled to a reversal because the court made no findings on the affirmative defenses set forth in the answer.

The facts follow. Defendants contacted plaintiff, a real estate agent, for the purpose of having him procure a tenant for a business block owned by defendants. For the same purpose defendants also contacted another agent, one Stevenson, who had no connection with plaintiff. Each agent knew of the other's employment and the "For Rent" signs of each were displayed on the premises—a fact likewise known to both agents. There is no pretense that either had the exclusive right to work on the deal. Plaintiff having done some little work in attempting to interest the

Nash-Chitwood Company in a lease of the premises, plaintiff and defendants had a conference on July 26, 1928, at which plaintiff had in his possession a writing signed by Chitwood, the president of the Nash-Chitwood Company, showing the terms upon which that company was willing to lease defendants' property. These terms were not satisfactory to the defendants, but at this interview plaintiff drew up a form of lease satisfactory to them and this form defendants signed with the idea that it would be submitted by plaintiff to Chitwood for his approval. This form of lease provided for one month free rent, the next eleven months at $250 a month and the remaining five years at $450 per month, with a deposit of $1800 cash as security. At the same time defendants signed and delivered to plaintiff the following:

"July 26, 1928.

"We hereby agree to pay E. M. Peterson a commission of $800.00 in consideration of services rendered in securing a lease of property on lots 11 and 12, block 8, Middletown; such lease being with the Nash-Chitwood Co. The above commission is due when said lease is signed by both parties thereto.

"GUS MATCHINSKE,
"ADOLPH BANDING."

This constituted the only written agreement regarding plaintiff's commission. The terms of the form of lease signed by defendants did not prove acceptable to Chitwood. Plaintiff then busied himself in attempting to close the deal, but without success. About August 1, 1928, plaintiff, according to the testimony of defendants, went to the home of defendant Banding and informed him that the deal with Chitwood was off. This the plaintiff denies. After this conversation neither defendant had further contact with plaintiff except that on August 3, 1928, one of the defendants met plaintiff on the street. In the meanwhile the other real estate agent, Stevenson, had been working on the same deal over a period of some three weeks. August 3, 1928, Stevenson arranged for a conference between himself, the defendants and Chitwood. This conference took place August 4, 1928, at which time, after some four or five hours of negotiations, the Nash-Chitwood Company and the defendants finally executed a lease other than the form which defendants had theretofore

signed and given to plaintiff. This lease provided for a rental of $250 a month for the first seven months and $450 per month of the last five years and for a $1400 cash deposit, with the right of the lessee to cancel the lease at any time during its first three years by forfeiting the deposit, together with $800 more and with the right to cancel the lease after the first three years upon forfeiture of the $1400 only. Stevenson, the successful agent, was paid the regular commission of $800 by defendants. Plaintiff on the following day learned that the lease had been executed and demanded of defendants his $800 commission and upon being refused brought this present action. No claim is made that defendants did not remain neutral as between the two rival agents nor is there any evidence of fraud or bad faith in connection with the closing of the deal. Chitwood, president of the Nash-Chitwood Company, testified that plaintiff at no time presented a proposition to him which was satisfactory; that the only one which ever met with his approval was the one finally submitted by Stevenson; that prior to the day the lease was actually signed no proposition satisfactory to Chitwood had been submitted to him by either of the agents; that Stevenson had arranged the conference which resulted in the execution of the lease and that at the start of that conference no arrangement satisfactory to both parties had yet been effected. Stevenson testified that he had been conferring with Chitwood regarding the matter over a period of some six weeks prior to consummation and that he, Stevenson, had prepared the lease as finally executed.

Are appellants entitled to a reversal of the case because the court has failed to find on the affirmative defenses? They argue that they are entitled to have every material issue determined by a finding of fact, citing *Frascona* v. *Los Angeles Ry. Co.*, 48 Cal. App. 135 [191 Pac. 968]. While the general rule is clear, our courts in considering what omissions in findings are sufficient to require a reversal have so limited and qualified this general rule that when we come to apply it to a given set of findings it is a matter of no little difficulty to arrive at a correct solution of the problem presented.

As to the affirmative defense of cancellation by mutual consent, while it is true that there is no express finding thereon, the court did find (referring to the mem-

orandum) "that the plaintiff is still the owner and holder of said note," a finding wholly inconsistent with the fact that the note had been canceled. As to the absence of a finding on the defense that it was agreed that should negotiations then being carried on by plaintiff fail there should be no liability on the part of defendants, the court found that the services of plaintiff were "the procuring cause of the securing of the lease on the property described." Granted, then, that there was an agreement as set forth in the affirmative defense, the court has found that the negotiations carried on by plaintiff did not fail. We therefore conclude that the failure to find specifically on the affirmative defenses is not prejudicial to appellants. (*Phillips* v. *Stark*, 65 Cal. App. 136 [223 Pac. 443]; *Thresher* v. *Lopez*, 52 Cal. App. 219 [198 Pac. 419]; *Malone* v. *County of Del Norte*, 77 Cal. 217 [19 Pac. 422]; *Krasky* v. *Wollpert*, 134 Cal. 338 [66 Pac. 309]; *Hulen* v. *Stewart*, 191 Cal. 562 [217 Pac. 750]; *Millard* v. *Legion of Honor*, 81 Cal. 340 [22 Pac. 864].)

■ Respondent contends that any evidence that the commission memorandum was not to be effective unless the precise form of lease then delivered to plaintiff was executed may not be considered by this court, since it is an attempt to vary the terms of a written instrument by parol. Even if, as contended by respondent, this memorandum be considered as a promissory note, its delivery may, as between the original parties, be shown to have been conditional. (Civ. Code, sec. 3097; *Allen's Collection Agency* v. *Lee*, 73 Cal. App. 68 [238 Pac. 169].) And, of course, where consideration is the subject of inquiry the rule excluding parol evidence has no application. (19 Cal. Jur. 1020.)

■ The contention that there is no evidence to support the finding that plaintiff was the procuring cause of the execution of the lease must be sustained. It is settled in this state that where two or more brokers are at the same time engaged in attempting to lease or sell a property under the circumstances shown here, the agent who does not actually effect the deal is not entitled to commission. (*Cone* v. *Keil*, 18 Cal. App. 675, at 679, 680 [124 Pac. 548].) The rule thus announced has been approved in *Hill* v. *Knight*, 209 Cal. 14 [285 Pac. 691]. As said in *Cone* v. *Keil, supra,* at pages 679, 680:

"Merely putting a prospective purchaser on the track of property which is on the market will not suffice to entitle the broker to the commission contracted for, and even though a broker opens negotiations for the sale of the property, he will not be entitled to a commission if he finally fails in his efforts, without fault or interference of the owner, to induce a prospective purchaser to buy or make an offer to buy, notwithstanding that the owner may subsequently, either personally or through the instrumentality of other brokers, sell the same property to the same individual at the price and upon the terms for which the property was originally offered for sale."

In *McCoy* v. *Zahn Corp.*, 183 Cal. 191 [191 Pac. 20], we find a case strikingly similar to the case at bar. There our Supreme Court, in referring to the unsuccessful broker and the purchaser, stated at page 196: "However nearly he may have brought him to a favorable decision, if the negotiations were broken off before a decision was reached and a final decision is brought about by another agent, the latter will be entitled to the commission." And in the same decision we find at page 198: "The controlling fact was, who saw him last and brought him to a favorable decision?"

This has been established law in this state since the decisions in *Cone* v. *Keil* and *McCoy* v. *Zahn Corp.*, were handed down and must be considered as one of the risks assumed by a broker who does not obtain an exclusive agency.

Respondent, in endeavoring to escape the rule laid down in *Cone* v. *Keil* and *McCoy* v. *Zahn Corp.*, *supra*, has cited numerous cases, but these may readily be distinguished. Thus in *Bail* v. *Glantz*, 78 Cal. App. 49 [248 Pac. 258], the contract of employment was very broad, the owner agreeing the agent was to be entitled to the commission "if I deal either before or after the expiration of this contract with any person to whose attention said property was brought through the efforts or services of the agent rendered hereunder during the life of this agreement." This language is not found in the case at bar, also *Bail* v. *Glantz* did not involve the situation of two rival agents. In *Justy* v. *Erro*, 16 Cal. App. 519 [117 Pac. 575], no question of rival agents was involved and there the plaintiff had the exclusive right to sell the property for a period of 90 days. In *Leckey*

v. *Holst*, 97 Cal. App. 698 [275 Pac. 1015, 1016], relied upon by respondent as controlling, the facts were that the defendant owner and the prospective tenant had through the efforts of the plaintiff real estate agent executed an agreement calling for a fifteen year lease on the defendant's property. Thereafter the defendant signed a written agreement to pay the agent $1,000 "for her efforts in securing the lease. The said amount of $1,000 to be paid when agreement is signed or else to be paid $50 per month for a period of twenty-two months for first two years of the rental period which begins when the theatre is completed." Many months thereafter the owner and the tenant agreed, without the consent of the agent, to cancel their original arrangement and the court held that since the proposed purchaser and the owner had voluntarily canceled the agreement for the lease, that fact did not prevent the agent from collecting her commission. In *Wood & Tatum Co.* v. *Basler*, 37 Cal. App. 381 [173 Pac. 1109], no question of competing real estate agents was involved. The plaintiff there had an exclusive sales agency and the defendant owner was himself at fault in preventing the consummation of the deal because of his failure to perfect his title.

The only theory under which a recovery by plaintiff could be sustained here would be to construe the memorandum as being given not "in consideration of services rendered in securing a lease," but rather "in consideration of services rendered in attempting to secure a lease." Such a theory would be equivalent to holding that the commission had been earned before the memorandum was signed. No such contention would be warranted. The judgment is, therefore, reversed, with directions to the trial court to make findings in accordance herewith and to enter judgment for the defendants.

Marks, J., concurred.

Barnard, J., being absent, did not participate herein.