291 P.2d 68]

[Civ. No. 16493.   First Dist., Div. Two.   Dec. 19, 1955.]

FRANK O. ROGERS et al., Plaintiffs and Appellants, v.
E. S. HARRIS, Respondent; BETTY BOBIER, Defend-
ant and Appellant.

(1)

W. L. A. Calder, Abraham Glicksberg for Plaintiffs and Appellants.

Edward N. Jackson for Defendant and Appellant.

William Klein and Edward N. Jackson for Respondent.

DOOLING, J.—One Sol Bobier, who owned several parcels of real property in San Francisco, much of it encumbered, disappeared sometime in 1947. His wife Betty Bobier (defendant and appellant herein), in a superior court proceeding commenced for that purpose, was on January 20, 1948, appointed custodian and trustee of his property, upon the judicial determination that Sol Bobier was a missing person. Defendant and respondent Harris was one of Sol Bobier's creditors. In order to satisfy the missing Bobier's creditors and salvage his estate it was decided to sell certain of Bobier's properties and respondent Harris interested himself in bringing this about.

On March 1, 1947, Bobier had leased one of his parcels of real property, known as 801 Sutter Street, to the plaintiffs Rogers. The Rogers had paid to Bobier $20,000 as a deposit on the rent. In order to sell 801 Sutter Street it became necessary to secure from the Rogers a cancellation of their lease and it was agreed between the Rogers on one side and Harris and Betty Bobier on the other that the Rogers would surrender their lease upon being repaid their deposit of $20,000 in the following fashion: The Rogers were to receive a deed to a one-tenth interest in real property located at 2112 Jackson Street at an agreed value of $10,000; $3,000 in cash and a promissory note for $7,000 signed by Harris and Betty Bobier. An escrow was opened with a title company to effectuate this agreement. The instructions to the title company are not a part of the record. It appears, however, that the deed to the one-tenth interest in 2112 Jackson Street was delivered to the Rogers and they were paid the $3,000 in cash. A promissory note for $7,000 payable to the Rogers dated March 18, 1948, and due "On or before August 20, 1948" was deposited with the title company for execution by Harris and Betty Bobier.

When Harris and Betty Bobier went to the title company to execute this note they were accompanied by Betty Bobier's attorney. Harris testified that before he signed the note, at this attorney's suggestion, he wrote opposite the place for his signature: "Pamt. when trusteeship is settled" and his initials "E.S.H." He then signed the note and Betty Bobier signed beneath his signature.

The title company upon receiving the note so executed apparently delivered to Betty Bobier or to Harris a cancellation of the lease on 801 Sutter Street. The Rogers left the note with the title company until March or April of 1949 and did not know that the words "Pamt. when trusteeship is settled" had been written thereon until that time.

Plaintiffs set out the note *in haec verba* in their complaint and alleged: "That the trusteeship, as appears on the face of the note, has been prior to the filing of this action and now is, settled."

The defendants Harris and Betty Bobier in separate answers alleged that by its terms the note was not to be paid until the trusteeship was settled, that the trusteeship referred to was the trusteeship in the matter of Sol Bobier, a missing person, and that said trusteeship was still pending in the superior court and was not settled.

The trial court found "that the words 'Pamt. when trustee-ship is settled' and initials E.S.H. were written in the lower left hand corner of said promissory note by the defendant E. S. Harris, and . . . that by reason thereof plaintiffs' action is premature as to said defendant E. S. Harris." The court further found "that said writing was placed on said promissory note without the knowledge and consent of plaintiffs herein and that said writing was personal to said defendant, E. S. Harris."

The court concluded that the action was premature as to Harris because the trusteeship in the matter of Sol Bobier, a missing person, was not settled and gave a judgment of dismissal without prejudice in Harris' favor. The trial court further concluded that defendant Betty Bobier was not a party to the limiting words written and initialed on the note by Harris and gave the plaintiffs judgment on the note against defendant Betty Bobier.

Plaintiffs Rogers have appealed from the judgment in favor of Harris and defendant Bobier has appealed from the judgment against her.

### Plaintiffs' Appeal

The evidence established that the trusteeship referred to in the marginal notation written on the note by Harris and initialed by him was the trusteeship of Sol Bobier, a missing person. The file in that proceeding was introduced in evidence and it is not questioned that that proceeding was still pending. The court therefore properly concluded that the trusteeship was not settled.

The plaintiffs elected to sue on the note with the initialed memorandum: "Pamt. when trusteeship is settled" and to allege that the trusteeship had been settled. Whether under the facts they might have sued for a reformation of the note we need not decide. In any event they did not do so but elected to stand on the note including the initialed memorandum.

The natural effect of the initialed memorandum is to make a change in the due date set out in the body of the note. Appellants Rogers cite cases holding that a marginal notation cannot change the terms set out in the body of a note. These cases represent a minority view.

It is the generally accepted rule, in accordance with the settled law of contracts, that where a marginal notation is placed upon a promissory note by the maker before he signs the note with the intention of making the marginal notation a part of the contract it becomes a substantive part

of the note to which it is so affixed. (See the notes in 13 A.L.R. 251 and 155 A.L.R. 218.) Following this general rule it is held by a substantial majority of the courts which have considered the question that a notation placed on the note by the maker before signing it with the intention of changing the time of payment shown in the body of the note becomes a part of the contract and is effective to fix the time of payment according to the terms of such notation. (*Baucom* v. *Friend*, (D.C.) 52 A.2d 123; *Banking Commission* v. *Townsend*, 243 Wis. 329 [10 N.W.2d 110]; *Whittier* v. *First Nat. Bank of Sterling*, 73 Colo. 153 [214 P. 536]; *Weaver* v. *Weaver*, (Tex.Civ.App.) 171 S.W.2d 898; *Citizens Nat. Bank* v. *Piollet*, 126 Pa. 194 [17 A. 603, 12 Am.St.Rep. 860, 4 L.R.A. 190]; *Black* v. *Epstein*, 93 Mo.App. 459 [67 S.W. 736]; *Alden* v. *Camden Anchor-Rockland Mach. Co.*, 107 Me. 508 [78 A. 977]; *Franklin Savings Institution* v. *Reed*, 125 Mass. 365; *Wheelock* v. *Freeman*, 13 Pick. (Mass.) 165 [23 Am.Dec. 674]; *Heywood* v. *Perrin*, 10 Pick. (Mass.) 228; *Johnson* v. *Heagan*, 23 Me. 329; *Blake* v. *Coleman*, 22 Wis. 396 [99 Am.Dec. 53]; notes, 155 A.L.R. pp. 225-226 and 13 A.L.R. pp. 263-265.) There are cases in some jurisdictions which refuse to follow this rule. (See the cases to this effect collected in 155 A.L.R. pp. 226-227 and 13 A.L.R. p. 265.

We are satisfied, however, that the better rule, and the one comporting both with common sense and the law of contracts, is that where, as in the case before us, the maker before signing the note, with the express intention of modifying the date of payment contained in the body of the instrument, endorses on the note a notation which is sufficient to accomplish that purpose, such notation must be construed as a part of the contract and given its proper effect.

The only California cases cited by appellants Rogers which they claim are relevant to this question are *Poorman* v. *D. O. Mills & Co.*, 39 Cal. 345 [2 Am.Rep. 451] and *Payne* v. *Commercial Nat. Bank,* 177 Cal. 68 [169 P. 1007, L.R.A. 1918C 328]. Both cases apply the rule that a patent ambiguity on the face of a note cannot be explained by extrinsic evidence. The rule is not applicable to this case. Since the obvious purpose and effect of the addition of the language "Pamt. when trusteeship is settled" was to supersede and modify the date of payment set out in the body of the note it did not create an ambiguity.

Appellants Rogers also cite such cases as *Fraga* v. *Evans*, 90 Cal.App.2d 529 [203 P.2d 89], and *Estate of Baird*, 59

Cal.App.2d 303 [138 P.2d 698]. These cases stand for the rule that where a debt is to be paid upon the sale of property the debtor is allowed a reasonable time to sell the property and after the lapse of such reasonable time the debt becomes absolute. They are not applicable to this case. ▪ Only upon the return of the missing person or after his absence for seven years (Prob. Code, § 280 et seq.) could the trusteeship be settled. In the meantime and during his continued absence his trustee is under the continuing duty to conserve and manage his estate under the jurisdiction of the court which appointed her.

Appellants Rogers also argue that Harris put a practical construction on the note which should be controlling. They testified to repeated demands for payment to which Harris replied that he was not able to pay immediately but would do so as soon as he was able. Harris denied this in his testimony and an appellate court cannot reweigh conflicts in the evidence.

Appellants Rogers seem also to argue that the marginal notation was an unauthorized alteration of the contract evidenced by the note. The note did not become a contract, however, until it was executed and *delivered*. ▪ "The payee of a negotiable instrument gets no property in it until its delivery, and the maker, therefore, incurs no liability or obligation to the payee until delivery." (8 Cal.Jur.2d, Bills and Notes, § 37, p. 370; Civ. Code, § 3097.)

▪ We conclude that the trial court's judgment dismissing the action against Harris without prejudice was proper.

### *Defendant Bobier's Appeal*

▪ The trial court, as we have seen, found that the marginal notation was personal to defendant Harris and was not a part of defendant Betty Bobier's contract. The defendant Harris not only wrote the marginal notation by his own hand but he also wrote his intials "E.S.H." opposite this notation. Betty Bobier signed the note without initialing the marginal notation. An uncertainty or ambiguity appears on the face of the note as to whether Betty Bobier, who did not initial the marginal notation, intended it as a part of her contract. Her testimony on the subject is clouded with uncertainty. The reporter's transcript shows the following obviously garbled question and Betty Bobier's answer:

"Q. Can you tell me now whether or not he (referring to Betty Bobier's attorney) advised you to say that that cause payment was to be made when the trusteeship is settled?

"A. Yes, he did; that was in the title record."

Appellant says that the word "cause" obviously should be read "clause." With this alteration the question is still unintelligible. What does "Did he advise you to say that that clause . . . ?" mean?

An uncertainty in a contract is to be construed against the person who caused the uncertainty to exist. (Civ. Code, § 1654.) Here Betty Bobier caused the uncertainty to exist by failing to initial the marginal notation. It would seem the natural procedure if she intended to adopt the marginal notation for her to initial it as Harris had just done in her presence. We cannot say that the trial court was not reasonably entitled to conclude that Betty Bobier did not intend to adopt the marginal notation as a part of her contract.

Judgment affirmed.

Nourse, P. J., and Kaufman, J., concurred.

Petitions for a rehearing were denied January 18, 1956, and the petitions of plaintiffs and appellants and defendant and appellant for a hearing by the Supreme Court were denied February 15, 1956.