[Civ. No. 5399. Fourth Dist. May 28, 1957.]

W. FRANCIS WILSON, Appellant, v. J. NEWTON BRAMBLETT et al., Respondents.

Iener W. Nielsen, James Robert Nielsen and Kent A. Blake for Appellant.

Aten & Aten and Lawrence W. Young for Respondents.

GRIFFIN, J.—Plaintiff and appellant W. Francis Wilson, an attorney at law in Phoenix, Arizona, brought this action against certain named defendants, including respondents J. Newton Bramblett, Frank J. Stefanich, Stuart M. White, James G. Huebner, Tim Mazzoni, and F. M. Hammack, to recover on a promissory note for $9,845.54, alleged to have been executed on August 30, 1951, by defendant C. M. S. Kipling (not served) and respondent Stefanich. It was subsequently signed by C. M. S. Kipling, as general partner, under the typewritten title "The Kipling Syndicate." The note was for claimed attorneys' fees rendered to the Kipling Syndicate, a California copartnership. The court found generally in favor of defendants; that no such note was ever *executed or delivered* by said individuals or the partnership; that Kipling's power, as a general partner, was limited, and did not include the power to execute a note on behalf of the syndicate; that the syndicate was a limited partnership, and

plaintiff well knew of such limitation and did not act in good faith; that the delivery and liability of the parties under said note was conditioned on the fact that Bramblett, a general partner, would also sign it; that in fact he did not sign it and there was no actual delivery to plaintiff of said note; that it was materially altered by plaintiff and accordingly the note was of no force and effect. Plaintiff was denied recovery. Judgment went for defendants and respondents.

It is appellant's contention that the evidence does not support the findings of (1) a limited partnership; (2) that Kipling and Stefanich did not have authority to execute the note for the partnership; (3) that it was conditionally delivered; or (4) that appellant materially altered it.

The facts indicate that on January 7, 1950, at Fresno, defendants signed articles of limited partnership to acquire and develop and sell certain oil properties in Arizona. It was capitalized under a unit system, showing the names of the limited, as well as the general partners, and the number of units owned by each. The general partners were Bramblett and Stefanich, of California, and Kipling and Harris, of Phoenix, Arizona. Under the partnership agreement the remaining defendants were limited partners and the disbursement of any money was to be made by Bramblett and Stefanich, who had the sole authority to sign all checks. Only the general partners had authority to carry on the business of the copartnership. The limited partnership agreement, although signed by all parties concerned, was neither sworn to nor recorded, as required by section 15502 of the Corporations Code. The evidence shows the reason it was not recorded was due to the likelihood that other people might be haunting them as prospective investors. Apparently appellant knew of those claimed defects and the court so found. It also found, in effect, that as between the partnership and appellant, there had been a sufficient compliance with the law under subdivision (2) of that section. It does appear that for convenience sake, in purchasing and negotiating for other land or leases, on May 10, 1950, all limited and general partners gave a limited written power of attorney to Kipling to "execute documents of conveyance . . . leases . . . and such other documents as are necessary to acquire or dispose of real property" belonging to the syndicate. It did not include the execution of promissory notes on behalf of the syndicate. The evidence also shows that the syndicate also formed a corporation and operated through such corporation.

Appellant was president of it and acted as attorney for both companies. He had some arrangement to purchase stock in it, if it proved productive. The account of attorney's fees and expenses incurred arose for his advice and services rendered to both. All of the files and records were kept in appellant's office, including a copy of the partnership agreement. Some oil drilling followed which apparently was not entirely successful. Appellant rendered monthly accounts to the syndicate for the claimed indebtedness due him. Harris, a general partner, terminated his interest in the syndicate and the three remaining general partners conducted the business. There is testimony that as to important issues the general plan was to obtain the consent or ratification of all three, but as to minor matters, this was not necessarily always the case.

On August 30, 1951, Stefanich and Kipling met with appellant in his office to obtain some papers from him. Plaintiff refused to turn them over until they arranged for the payment of his claimed attorney's fees. They were unable to pay him. Appellant then prepared a promissory note, in typewritten form and in duplicate, covering the amount indicated. It recites: ". . . we, the undersigned, jointly and severally promise to pay" plaintiff the amount indicated, at $100 per month, beginning October 1, 1951, including 4 per cent interest until paid. Then follows three lines under which were typed the names C. M. S. Kipling, Frank J. Stefanich, and J. Newton Bramblett. No mention was made therein of the syndicate, in any form. For all intents and purposes the note on its face indicates an individual liability and not a partnership liability. The note and the copy were then signed by Kipling and Stefanich. There is some conflict in the evidence as to what was said in connection with the claimed delivery of the note. All agreed that Stefanich would return to Fresno, tell Bramblett of the transaction, and see if he would sign it, and if so, it would then be forwarded to appellant. The copy was left with appellant. On Stefanich's return, Bramblett refused to sign, or at least did not sign the original note. Considerable correspondence ensued between the parties. From this it may well be indicated that the original note or the copy was not to be effective as to the other two makers or the partnership unless Bramblett also signed. On September 19, 1951, appellant wrote Stefanich: "I want that note signed by Newt (Bramblett) in exchange for the one that I have, or else I want to know that he isn't going to sign." (It ap-

pears that appellant had previously threatened to sue the syndicate and these individuals for this sum, on an open book account.) On September 24, 1951, Stefanich replied that Bramblett was out of town for three weeks and he could not see him until his return; that he explained the situation to Bramblett and he said he wanted to think it over. He wrote: "You have our two signatures which will hold for the time anyhow." On October 8th, Stefanich wrote appellant: "Though Newt hasn't said he won't sign the note, the fact remains he has not. Whether he will join with Kip and I within the next few days I am not at all certain though I think he will. However, this situation raises a point since Kip and I signed under the condition the note wouldn't be binding on either of us if Newt didn't also sign. Just where do we stand?"

On October 12th, plaintiff answered:

"My understanding of the delivery of the note was that the executed note which I had in my possession was a settlement of the debt as far as you and Kip were concerned, and that you were to secure a note signed by you, Kip and Newt and return the same to me in exchange for the note that I kept. However, please be informed that if you wish to state that the note was conditionally delivered conditioned upon Newt's signing the note which you have with you, it is perfectly all right with me, and it is possible that my memory in that connection is not correct. If you wish to settle this matter as far as you and Kip are concerned, it will be necessary for you and Kip to write me a letter stating that you ratify the note which has already been delivered. If you wish to settle this matter by executing the note which you have in your hands and have Kip and Newt execute it likewise, you may send the same to me on or before the 20th day of October, together with the first payment due on the 1st day of October, 1951. If I have not received either of the foregoing settlements by that time, I shall proceed to institute an action for the *collection of the account*." (Italics ours.)

On October 20th, Stefanich sent $100 "to be applied to the reduction of the open account," and stated to appellant: "Newt has not yet signed the note, so in view of the situation we can let the subject of the note ride until I see you. *Anyway* we decide to proceed, on the open account or a note the result will be the same in the long run for all practical purpose. Certainly I don't want to be bound on a note unless all three of us are similarly bound, I am sure you will agree."

Appellant apparently wrote on the duplicate note that the $100 was a payment on the note. However, on October 23d, appellant replied that he had credited the $100 "to the account" and said:

"I can understand your feeling of not wanting to do something with regard to the account that the other fellows are not willing to cooperate on. The only thing in this regard is that you are probably all jointly and severally liable for the entire amount, and as you say, in the long run there is not a lot of difference between an open account and a note, . . .

"I will expect another hundred dollar payment on the 1st of November, and on the 1st of each month thereafter. However, it is to be distinctly understood that unless the note which I have is *ratified* or the note which you have is *signed by the three of you,* there is no implication whatsoever that no action will be brought on the account even if the hundred dollars is paid each month.

"I appreciate your leaving me in a position where I can best protect myself, and think you are very foolish to let it ride that way." (Italics ours.)

On November 3d, Stefanich enclosed another $100 "for payment of account." Apparently some time passed during these negotiations. No action was filed on the account or on the note. The original note, dated August 30, 1951, was still in the hands of Stefanich. Appellant testified that in December, 1951, Stefanich and Kipling were in his office; that Kipling said he could legally sign for the partnership and appellant had him sign the duplicate note, which had been retained by appellant, adding in typewriting: "The Kipling Syndicate By (Signature) C. M. S. Kipling, General Partner." The original contained no such endorsement or insertion. Bramblett testified it was not until January, 1955, after this action was instituted, that he, for the first time, was informed of this addition. Stefanich testified he was present in Wilson's office in December, 1951, with Kipling, discussing other matters; that the subject of Bramblett's refusal to sign the note came up; that Kipling volunteered the statement that he, as a general partner, was authorized to sign for the partnership but he did not do so at the time; that he did not know Kipling had signed for the partnership, as indicated, until December, 1954; that he never authorized him to sign it as such general partner and he was never notified at the time it was signed that Kipling was signing for the partnership, and that appellant never received his consent nor the

consent of any of the general or limited partners to add it. It was not until October 28, 1954, when appellant brought this action.

Many of the several defenses made by respondents and found by the court as to why the note was unenforceable against these defendants appear to be tenable. Without discussing them, we conclude that respondents' liability on the original note and copy thereof sued upon was conditional, depending on the signature of Bramblett or ratification by the individuals signing, and was not duly executed and delivered, within the meaning of that term. This conclusion is sufficiently supported by the evidence and the law, even though appellant retained a copy of the note. It therefore becomes unnecessary to determine the other claimed defenses. Appellant had actual knowledge of the terms of the partnership agreement and the limitations respecting the authority of the members thereof. The return of the original note to appellant was conditioned on its being signed by respondent Bramblett. It was never returned. Respondents' repudiation of the note left plaintiff free to sue on the original account. Although the evidence is conflicting, it appears that Bramblett and Stefanich never authorized the signing of the partnership name to the carbon copy of the note by Kipling. Appellant elected to stand on his chance of recovery on the carbon copy of the note, as thus altered. This was his unfortunate choice. It has been definitely held that where a note is given under an agreement that it is not to become binding until signed by another person, the failure to obtain such additional signature precludes a recovery as between the original parties or transferees who have notice of the agreement, unless the obtaining of the additional signature is wrongfully prevented by the maker. (10 C.J.S. p. 517, § 79; 8 Cal.Jur.2d 537, § 213; *Rogers* v. *Harris*, 138 Cal.App.2d 1, 6 [291 P.2d 68]; *Silva* v. *Gordo*, 65 Cal.App. 486 [224 P. 757]; *Allen's Collection Agency* v. *Lee*, 73 Cal. App. 68 [238 P. 169]; *Peterson* v. *Matchinske*, 108 Cal.App. 7 [291 P. 248]; *Harper* v. *French*, 29 Cal.App.2d 214 [84 P.2d 216]; Civ. Code, § 3097; 8 C.J., p. 206, § 336.) Although the evidence on this question, and the question of ratification of the note is conflicting, the court's finding has evidentiary support.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.